AUGUST MALKMUS, Respondent, v. ST. LOUIS PORTLAND CEMENT COMPANY, Appellant.

St. Louis Court of Appeals, October 1, 1910.

1. RELEASES: Cancellation: Fraud: Necessity of Tendering Consideration Received. Where one concedes that he has executed a release of a cause of action, but claims it was induced by fraudulent representations antecedent to the execution, and seeks its cancellation because of the fraud, he must pay, or offer to pay, the amount received under the release.                    •

2. ————: Fraud: Avoiding Contract Ab Initio: Tender of Consideration Not Necessary. Where the fraud inheres in the execution of a purported release of a cause of action, and is of a character preventing a contract in the first instance, a person thus imposed on need not pay nor tender the consid-

eration received, as a prerequisite to his right to sue on the cause of action said to have been released, since he neither affirms the release nor seeks its cancellation, but proceeds on his cause of action as though a contract for an acquittance had never been entered into.

3. MASTER AND SERVANT: Injury to Servant: Contributory Negligence: Jury Question. Whether an employee in a cement factory, who was injured by being struck by a protruding iron on a belt running 75 miles an hour, which iron it would have been difficult to have seen, because of the presence of fine dust emitted in the factory, was guilty of contributory negliience in failing to observe the iron, *held*, under the evidence, for the jury.

4. ———: ———: Defective Appliances: Notice of Defect. In an action by a servant for injuries received by being struck by an iron protruding from a belt, where it appeared the iron was part of the construction of the belt, it was not necessary, in·order to establish the master's negligence, to prove he had notice of the existence of such iron, since under the circumstances, he is conclusively presumed to have known thereof, if it could have been discovered by ordinary care.

5. ———: ———: Safe Place to Work: Safe Appliances. A master must exercise ordinary care to furnish a servant a reasonably safe place to work and to supply him with reasonably safe appliances, and, where defects in the construction of the appliances exist which are discoverable by ordinary care, he is liable for injuries to a servant thereby.

6. ———: ———: Negligence of Master: Jury Question. In an action for injuries to a servant in a cement factory, who was struck by a protruding iron on a belt running at a high speed, evidence *held* to require submission to the jury of the issue of the master's negligence in providing such a belt.

7. ———: ———: Master's Duty: Instructions. In an action for injuries to a servant, an instruction informing the jury it was the duty of the master to furnish the servant with an ordinarily safe place to work and to warn him of any dangers not known and obvious was unsound, as omitting to inform the jury it was the master's duty to exercise *ordinary care* to furnish the servant a reasonably safe place to work, etc.

8. ———: ———: ———: ———: Harmless Error. Said instruction was harmless, however, in view of the fact that subsequent portions of it clearly indicated the theory of defendant's liability and non-liability, under the uncontroverted facts of the case, by requiring the jury to find that, while plaintiff was exercising ordinary care for his own safety, he was injured as a result of defendant's negligence in maintaining a belt

with an iron protruding one and a half inches beyond the edge thereof and omitting to furnish lights sufficient to enable plaintiff to ascertain the conditions, and in view of the further fact that the evidence clearly showed defendant failed to exercise ordinary care to furnish plaintiff a reasonably safe place to work.

Appeal from St. Louis Circuit Court.—*Hon. Geo. C. Hitchcock,* Judge.

AFFIRMED.

*Watts, Williams & Dines* and *William R. Gentry,* for appellant.

(1)   Where a release has been executed and the consideration therefore received, an action cannot be maintained on the cause of action released, without returning, or offering to return, the consideration received.   The law of Missouri is settled that the consideration must be returned, or an offer of return made within a reasonable time after discovery of fraud by plaintiff and before institution of a suit.   Althoff v. Transit Company, 204 Mo. 166.   (2)   The case was tried on the theory that defendant was negligent in failing to sufficiently light the room, or in permitting a metal hook or clasp on the belt to so project or extend as to be dangerous.   There was no evidence as to when the metal clasp or hook first extended or protruded; no evidence that the defendant had any knowledge that it so protruded or extended, or that the defendant had any opportunity to repair it.   Failure to prove notice of this defect and opportunity to remedy it was fatal to plaintiff's case.   Wojtylak v. Coal Co., 188 Mo. 281; Kelly v. Railroad, 105 Mo. App. 365; Krampe v. Brewing Assn., 59 Mo. App. 277; Pavey v. Railroad, 85 Mo. App. 218; Herbert v. Shoe Co., 90 Mo. App. 305; Mfg. Co. v. Woodson, 94 Ala. 147; Wilson v. Railroad, 85 Ala. 273; Railroad v. Holborn, 84 Ala.

133; Railroad v. Flannigan, 77 Ill. 365; Rolling Stock Co. v. Wier, 96 Ala. 396; Burke v. Rubber Co., 21 R. I. 466. (3) The court erred in giving instruction No. 1 asked by plaintiff. The first sentence of this instruction made defendant an insurer of the safety of the place to work furnished plaintiff. This is reversible error. Ordinary care in this regard is all that is required. Hach v. Railroad, 117 Mo. App. 11; Glasscock v. Dry Goods Co., 106 Mo. App. 657; Wojtylak v. Coal Co., 188 Mo. 260; Mertens v. Transit Co., 122 Mo. App. 304; Schmidt v. Railroad, 149 Mo. 269; Campbell v. Transit Co., 121 Mo. App. 406; Phelan v. Paving Co., 115 Mo. App. 423; Woods v. Railroad, 188 Mo. 229.

*J. M. Lashly* and *Thomas G. Rutledge* for respondent.

(1) (a) A master is chargeable with knowledge of conditions he creates himself. Railroad v. James, 56 Fed. 1001; Shearman & Redfield on Neg., sec. 194; 26 Cyc., p. 1114; Crown Coal Co. v. Hiles, 43 Ill. App. 310; Broderick v. Railroad, 56 Mich. 261; Merton v. Railroad, 81 Mich. 423. (b) The master is liable if the dangerous condition could have been discovered by the exercise of ordinary care on his part. Herdler v. Buck Stove, etc., Co., 136 Mo. 3; Moriarity v. Schwartzschild, 132 Mo. App. 650; Herbert v. Mound City B. & S. Co., 90 Mo. App. 305; Bullmaster v. St. Joseph, 70 Mo. App. 69. (c) A legal inference of negligence on the part of the master is authorized where the servant is put to work in a dangerous place. The master cannot furnish a place necessarily dangerous and escape liability because he says he did not know. Reichla, v. Greensfelder, 52 Mo. App. 43; Musick v. Dodd Packing Co., 58 Mo. App. 322; Irmer v. Brewing Co., 69 Mo. App. 17; Plank v. Railroad, 60 N. Y.

607; Zellars v. Water & L. Co., 92 Mo. App. 107; Nash
v. Brick Co., 109 Mo. App. 600.   (3)   Fraud in the exe-
cution of a release makes the instrument absolutely
void.   In such a case no rescission is required, there
being nothing to rescind.   Where there is no rescission
there is no necessity for return or tender.   Sec. 654,
R. S. 1899; Girard v. Car Wheel Co., 123 Mo.
358; Berry v. Railroad, 122 S. W. Rep. 1043; Dwyer
v. Railroad, 66 Mo. App. 335; Och v. Railroad, 130 Mo.
27; Vautrain v. Railroad, 28 Mo. App. 538; Jones v.
Higgins, 73 Mo. App. 331; Courtney v. Blackwell, 150
Mo. 245; Hayden v. Railroad, 117 Mo. App. 76; Winter
v. Railroad, 160 Mo. 159; Alexander v. Railroad, 54
Mo. App. 66; 34 Cyc., pp. 1067-1073; Shaw v. Webber,
79 Hun (N. Y.) 307; Railroad v. Hambright, 87 Ark.
614; Simoli v. Rubber Co., 81 Conn. 423; Butler v. Rail-
road, 88 Ga. 594; Railroad v. Edmonds, 33 Ky. L. Rep.
933; Bjorland v. Seattle El. Co., 35 Wash. 439; O'Brien
v. Railroad, 89 Iowa 644; Bliss v. Railroad, 160 Mass.
447; Kirchner v. Howe Mach. Co., 135 N. Y. 182.

NORTONI, J.—This is a suit for damages accrued
to plaintiff on account of personal injuries suffered by
him through defendant's negligence.   Plaintiff recovered
and defendant prosecutes the appeal.

Defendant owns and operates a mill engaged in the
manufacture of cement and plaintiff was a laborer in
its employ at the time of receiving his injuries.   As
parcel of the cement plant, defendant maintains one
large room about seventy feet wide and one hundred
and twenty feet long in which large belts, drums and
fly wheels are constantly operating.   As a result of the
process of manufacturing cement, a fine dust constantly
filled the atmosphere and settled in this large room and
it seems plaintiff was engaged in sweeping out this
dust.   Though he had been in defendant's service for
two years, plaintiff had never worked in this room un-
til four or five days before his injury, and was unfa-

miliar with the conditions. · Among other things, it was plaintiff's duty to sweep under the belts operating the machinery, and while thus engaged a protruding iron at the splice of one of the belts struck him on the head, as the belt was moving at about seventy-five miles per hour, and crushed his skull. Plaintiff was discovered soon after his injury lying beneath the belt in an unconscious condition, and was removed to a hospital where he remained for about five weeks.

The first question for decision pertains to a release pleaded by defendant in its answer and alleged to have been executed by plaintiff as an acquittance of his cause of action for the negligent injury. Plaintiff de- nies that he executed a release and asserts defendant made him a present of sixty-five dollars, which was equivalent to the amount of wages he would have earned if at work during the time he was confined in the hospital. The precise question for decision in connection with this matter is as to whether or not plaintiff may maintain this suit without first having tendered to defendant the amount of sixty-five dollars which it paid him at the time of the execution of the instrument, which plaintiff says was to be an ordinary receipt, but turns out to be a release and acquittance.

It is conceded that defendant paid plaintiff sixty-five dollars two or three weeks after he came out of the hospital and that he executed to it the instrument of writing which appears to be both a receipt for the amount and a release of the cause of action now sued upon. But plaintiff says he did not intend to release his cause of action and that he was imposed upon by defendant's agents who read the paper to him as a receipt. Defendant, having pleaded the release as a bar to the right of recovery, plaintiff replied under the provisions of section 654, Revised Statutes 1899, section 654, An. St. 1906, to the effect that he had not released his cause of action, and asserted that though defendant gave him sixty-five dollars on the date in ques-

tion, it was a gift only, for which he executed an ordinary receipt. The reply avers, too, that if the instrument pleaded by defendant purports to be a release of the cause of action, then it was obtained without his knowledge or consent through the fraud, deceit and imposition of defendant practiced on him because of his then impaired mental condition. After plaintiff had made a prima facie case by showing his injury and how it was occasioned, defendant introduced the release and other evidence tending to show that plaintiff released his cause of action for the sum of sixty-five dollars, which was duly paid him by it. In rebuttal, plaintiff gave testimony to the effect that immediately after coming out of the hospital he called upon defendant's agent and requested some financial assistance for the reason he was unable to work and provide for his family. After some consideration, defendant's agent figured that his wages, if employed during the time he was confined in the hospital, would amount to about sixty-five dollars, which amount it gave him as a present; that he thereupon signed and executed the instrument in writing as a receipt for such amount, not knowing it to contain any words of release or other contractual terms. Plaintiff says that, on account of his then condition, he was unable to read the paper and did not know its contents and that though it was read to him by defendant's agents both in English and in German, it was read as if it were a receipt only and the words of release were concealed. Several witnesses for plaintiff testified that his mental condition was so impaired at that time as to render him incompetent to transact ordinary business affairs. There is testimony, too, to the effect that his injury, besides impairing his mental condition, occasioned a paralysis of one side of his body and that he was threatened with paresis.

The jury found the issue for plaintiff, in accordance with his theory, to the effect that defendant made him a present of sixty-five dollars and merely took a

receipt therefor, or, in other words, as though the minds of the parties never met upon the contractual stipulation to the end of releasing the cause of action sued upon. Plaintiff not having tendered or offered to return the sixty-five dollars to defendant, it is argued that no recovery may be awarded him; for it is said that the law requires as a condition precedent in every instance where one seeks to avoid the consequences of a release that he should first place the other party in *statu quo* by either paying or offering to pay the amount received thereunder. There can be no doubt of the general proposition of law asserted. The authorities are numerous which support and affirm it. It is sufficient to cite two only which are relied upon. [Jarrett v. Morton, 44 Mo. 275; Althoff v. St. Louis Transit Co., 204 Mo. 166, 102 S. W. 642.] But the doctrine referred to is without influence here, for according to the case made by plaintiff no release of the cause of action was ever executed. By reference to the authorities cited, which are relied upon by defendant, it will appear that in each instance there involved plaintiff conceded a release of the cause of action had been executed and sought a recovery notwithstanding the fact, for the reason there had been fraud in the inducement or matters collateral to its execution. The matter in judgment here is to be distinguished from that involved in those cases, in that, instead of its consisting of fraud which induced the party to execute a release knowing it to be such, here the case presented is one where a fraudulent practice inhered in the execution of the instrument and plaintiff was deceived through defendant's wrong in executing an instrument, which he did not know to be a release, and without an intention to do so. In other words, in the instance now in judgment, according to plaintiff's theory of the case, which is affirmed by the jury, there was never a contract of release executed between these parties, for through fraud of defendant, plaintiff was induced to sign what he understood was a receipt, when

in fact the instrument contained a contract of release of which he had no knowledge and to which, of course, in the circumstances stated, he could not have given his assent. When one concedes the fact that he has executed a release, though induced to do so by fraudulent representations antecedent to the act of execution, and seeks its cancellation because of fraud in the inducement, he is, of course, required to place the other party in *statu quo* by either paying or offering to pay the amount received thereunder, but this rule obtains because, by seeking a cancellation of the instrument, he affirms and admits its existence and the law lays upon him the obligation to restore the other party to his prior condition before it will relieve him of the burdens which the instrument has placed upon him. However, when plaintiff denies entirely the execution of the release and asserts that though he received money from defendant in a transaction of a nature which involved no release and that defendant perpetrated a fraud upon him in the execution of the instrument, by obtaining his signature to one of a different character from that contemplated and intended, the question presented is one disaffirming any contract whatever as to the release of the cause of action. In cases of this character, the law treats with and disposes of the question on the theory that there has been no *aggregatio mentium* and therefore no contract in the first instance which it is necessary to cancel and set aside as a prerequisite to the right of recovery on the cause of action. If there be no contract of release in the first instance, of course, plaintiff is not required as a condition precedent to either repay or offer to repay the moneys he acquired in order to obtain the right of cancellation; for, indeed, there is naught to be cancelled. For authorities directly in point involving alleged releases of causes of action like this one, see Dwyer v. Wabash R. Co., 66 Mo. App. 335; Girard v. St. Louis Car Wheel Co., 46 Mo. App. 79; Vautrain v. St. Louis, I. M. & S. R. Co., 8 Mo.

App. 538; s. c. affirmed, 78 Mo. 44. Though the case
of Och v. M. K. & T. R. Co., 130 Mo. 27, 43, 44, 31 S.
W. 962, did not present the identical question in judg-
ment here, the Supreme Court pointed out the distinc-
tion which obtains in such cases as to fraud in the in-
ducement and that which inheres in the execution of the
instrument and said that the return of the money was
not a prerequisite to the right of recovery in cases of
the latter class. See Och v. M. K. & T. R. Co., 130 Mo.
27, 42, 43, 44, 31 S. W. 962. For other cases in point,
see Bliss v. New York Central, etc., R. Co., 160 Mass.
447; St. Louis, I. M. & S. R. Co. v. Brown (Ark.), 83
S. W. 332; Kirchner v. New Home Sewing Machine Co.,
135 N. Y. 182; Shaw v. Webber, 86 N. Y. 307 (79
Hun); St. Louis, I. M. & S. R. Co. v. Hambright, 87
Ark. 614, 113 S. W. 803; Simeoli v. Derby Rubber Co.,
81 Conn. 423; O'Brien v. Chicago, Milwaukee, etc., R.
Co., 89 Iowa 644; Chicago, R. I., etc., R. Co. v. Lewis,
109 Ill. 120; Butler v. Richmond, etc., R. Co., 88 Ga.
594; Bjorklund v. Seattle Electric Co., 35 Wash. 439;
34 Cyc. 1071, 1072, 1073, 1074; 24 Am. and Eng. Ency.
Law (2 Ed.), 320, 321, and a wealth of authorities col-
lated in the notes.

Prior to our statute (section 654, R. S. 1899, sec.
654, An. St. 1906), which authorizes the issue of fraud
in obtaining a release first tendered in the reply to be
tried by a jury in a court of law, there was considerable
disagreement among the judges of this state as to
whether the consequences of a release might be obviated
at all without first addressing a court of equity for
that purpose. However, the question was finally set-
tled by a majority opinion of the court, to the extent
that where fraud inhered in the execution of the instru-
ment so that it appeared a party executing the same
had no knowledge of its contents and therefore there
was no contract in the first instance, the courts of com-
mon law would deal with the matter on the ground that
the legality of the contract itself was called in ques-

tion. See Girard v. St. Louis Car Wheel Co., 123 Mo. 358, 27 S. W. 648; s. c. 46 Mo. App. 79; Och v. M. K. & T. R. Co., 130 Mo. 27, 41, 31 S. W. 962. Generally speaking, at common law and aside from any statute on the subject, it is said the question whether a release tainted by fraud can be set aside in a court of law or whether the assistance of a court of equity is necessary depends upon the nature of the fraud. 24 Am. and Eng. Ency. Law (2 Ed.), 318, 319, thus states the doctrine:

"Where the fraud is practiced in the execution of the instrument as where it is misread to the releasor, or where there is a surreptitious substitution of one paper for another, or where a party is tricked into signing an instrument which he did not intend to execute, or where advantage is taken of the mental or physical condition of the releasor—in all such cases a court of law may take cognizance of the fraud on the ground that the legal existence of the instrument is in question. The question is, whether the writing in the form of a release has acquired original validity as a contract, and is a legal question."

We believe the rule is universal to the effect that in all of those cases where the fraud inheres in the execution of the instrument and is of a character which wholly prevents a contract in the first instance a plaintiff thus imposed upon is not required to pay or tender the amount received as a prerequisite to his right to sue on the cause of action said to have been released, for in such cases he neither affirms a release nor seeks its cancellation, but proceeds on his cause of action as though no contract had ever been entered into touching an acquittance. As to the common law with respect to the matter of tender in the circumstances referred to, the Am. and Eng. Ency. Law (2 Ed.), vol. 24, pp. 320, 321 thus states the doctrine:

"It is sometimes said to be a general rule that one who seeks to avoid or rescind a release must restore the consideration paid therefor, or otherwise put the other

party *in statu quo.* The plaintiff cannot be allowed both
to affirm and disaffirm according as the case may termi-
nate; he cannot affirm for what he has received, and
disaffirm and repudiate the release as to the difference
between that amount and what he might expect to re-
cover by the verdict of the jury; he must disaffirm and
rescind the release *in toto.* But the rule is not a general
one. The true rule as gathered from the cases is that
in those cases where a court of law would be authorized
to declare a release void, as above set forth, a return of
the consideration is not necessary; but where the re-
leasor would go into a court of equity to have the re-
lease set aside or annulled, he must restore to the other
party the consideration received therefor. An actual
return is not necessary. The rule is satisfied by a tender
of the money when the suit is commenced, or by its
final deduction from the judgment obtained, or where
the payment is a gratuity or relates to a part only of
the cause of action." It appearing plaintiff was de-
ceived and led to sign a release when he understood
he was executing a mere receipt, he obtained no money
as a result of a contract in the first instance which he
is required to repay or tender as a prerequisite to prose-
cuting this action which was at no time acquitted.

It is argued that the court should have instructed
a verdict for defendant for the reason it does not ap-
pear defendant knew or might have known of the pro-
truding iron on the belt which injured plaintiff in time
to have repaired the defect. The two specifications of
negligence relied upon for a recovery are to the effect
that defendant maintained one of its belts where plain-
tiff was directed to work with an iron bar protruding
about one and a half inches out from the edge of the
belt at the place where it was spliced and that the room
was insufficiently lighted to enable plaintiff to see the
condition of the belt. As before stated, the fine dust
emitted in the manufacture of cement filled the atmos-
phere so as to greatly obstruct the view, and while there

were some electric lights in the room, they were insufficient on account of the presence of the dust to enable plaintiff to see distinctly. However, all of the testimony shows the belt from which the iron bar protruded was operated at the rate of seventy-five miles per hour, and we believe it would have been difficult for one to see so small an object as this protruding iron even if there was an affluence of light. But this was for the jury to answer.

The evidence is uncontroverted to the effect that the lower strand of the belt by which plaintiff was injured was about fourteen inches wide and operated about five and a half feet above the floor. At the splice of the belt, there was made fast thereto a piece of iron or steel which protruded an inch and a half from its edge. As plaintiff was in a stooping position, engaged in sweeping, the protruding iron struck and crushed his skull. If the evidence tended to prove that the belt had been operating without this iron protruding and that it had but recently worked loose or something of that kind, there would be force in the argument that the belt was not shown to have been out of repair for a sufficient length of time to afford defendant either actual or constructive notice of the defect. But such is not the case, for it sufficiently appears the protruding iron was parcel of the construction of the belt and in those circumstances, the master is entitled to no notice, for he is conclusively presumed to know the conditions which obtain, if they may be discovered by the exercise of ordinary care on his part. It is the duty of the master to exercise ordinary care to the end of furnishing the servant a reasonably safe place in which and reasonably safe appliances with which to perform his labor and if defects in construction exist which might have been discovered and obviated by the exercise of ordinary care on the part of the master, he will be required to respond for such injuries as may befall the servant as a result thereof while exercising ordinary

care for his own safety. [Shearman and Redfield on Negligence (5 Ed.), sec. 194; U. P. R. Co. v. James, 56 Fed. 1001; Crown Coal Co. v. Hiles, 43 Ill. App. 310; Herdler v. Buck's Stove & Range Co., 136 Mo. 3, 37 S. W. 115; Herbert v. Mound City Boot & Shoe Co., 90 Mo. App. 305.] The court very properly refused to direct a verdict for defendant and referred the case to the jury for the reason it sufficiently appears that the iron protruding from the belt was parcel of the splice as the master had constructed it and one of ordinary prudence should have anticipated that it would likely injure an employee working thereabout.

The first instruction for plaintiff informs the jury that it was the duty of defendant to furnish plaintiff with an ordinarily safe place to work and to warn him of any dangers not known and obvious. It is argued this instruction is erroneous in that it omits to inform the jury that it was defendant's duty to exercise ordinary care to furnish plaintiff a reasonably safe place to work, etc. The instruction is inaccurately drafted and it would have been better to have defined defendant's obligation in respect to this matter more clearly. The argument is to the effect that as worded, the jury was told it was defendant's duty to furnish plaintiff an absolutely safe place. We believe the instruction is not susceptible to the full force of this argument, for it says that the obligation was to furnish an ordinarily safe place. However, the portion of the instruction thus criticized is unsound in doctrine, but we believe the judgment ought not to be reversed for that reason, as subsequent portions thereof clearly indicate both defendant's liability and its non-liability under the uncontroverted facts of the case. There can be no doubt that maintaining a protruding iron on the belt as was done in this instance is an act of negligence with respect to the safety of plaintiff and other uninformed persons who were assigned work near it. The facts that the iron protruded one and a half inches

beyond the side of the belt and that the belt operated at the rate of seventy-five miles per hour are admitted in the case, for no witness disputes them. This being true, it is perfectly obvious that defendant omitted to perform its obligation toward exercising ordinary care to furnish plaintiff a reasonably safe place in which to perform his task and it is immaterial what the instruction may have informed the jury with respect thereto. On the record before us the defendant is confessedly negligent with respect to the duty to furnish a reasonably safe place. The succeeding portions of the instruction require the jury to find that while plaintiff was exercising ordinary care for his own safety he was injured as a result of defendant's negligence in maintaining a belt with an iron protruding one and a half inches beyond the edge thereof and omitting to furnish lights sufficient to enable plaintiff to ascertain the condition while working thereabout. Though the first clause of the instruction is unsound, we believe when considered altogether in view of the uncontroverted facts of the case, it operated no material harm to defendant. A like ruling was made on a similar question by the Supreme Court in Bradley v. C. M., etc., R. Co., 138 Mo. 293, 307, 308, 309, 39 S. W. 763.

The arguments directed against the several other instructions given for plaintiff and that of defendant refused, are all sufficiently considered and the views of the court indicated in what has been said.

The judgment should be affirmed. It is so ordered. All concur.