IVA P. COX, Respondent, v. KANSAS CITY LIFE INSURANCE COMPANY, Appellant.

Kansas City Court of Appeals, February 13, 1911.

1. LIFE INSURANCE: Reinsurance: Medical Examination: When Condition Precedent. The defendant insurance company entered into a contract with a fraternal insurance company, the terms of which contract plainly provided that any member of the fraternal company, who was in good standing on the date of the agreement, was unconditionally entitled to reinsurance in defendant company. Plaintiff's deceased husband did not know of the agreement for some time, and continued to pay his dues to the fraternal insurance company, until he learned of the existence of the contract, whereupon he promptly notified defendant company of his acceptance of its offer of reinsurance. Defendant thereupon notified him that he had been suspended, and that in order to obtain such reinsurance, he must first undergo a medical examination. He offered to pay any arrearages, but failed to pass the medical examination satisfactorily. *Held*, that where the contract of reinsurance between defendant company and the fraternal company with its members prohibited defendant from requiring that the insured be subjected to a medical examination before he could avail himself of the benefit of reinsurance, notwithstanding that he may have failed after said date in paying his dues to the fraternal insurance company, *all* that the defendant could exact from the applicant for reinsurance was the payment of such dues. Hence the payment of such dues was not a condition precedent to the member's right of insurance without medical examination, and his widow can recover on the policy.

2. ————: Vexatious Refusal to Pay Loss: Jury Question. Where plaintiff's right to recover is indisputable, the refusal of defendant company to pay the loss without litigation was evidence of a vexatious refusal under section 7068, R. S. 1909, and it was not necessary that plaintiff should prove by explicit evidence that the delay was vexatious, but the question was for the jury under all the facts and circumstances. Hence, a judgment for a penalty for five hundred dollars attorney's fees will be affirmed.

Appeal from Jackson Circuit Court.—*Hon. R. B. Middlebrook,* Judge.

AFFIRMED.

*Reed, Atwood, Yates, Mastin & Harvey* for appellant.

*H. L. Eads* and *Harkless & Histed* for respondent.

BROADDUS, P. J.—The plaintiff's husband was a member of a fraternal benefit society organized under the laws of Missouri, located at Hamilton and known as the Fraternal Home. He lived at Pattonsburg, and belonged to a local lodge of the Home at that place. He held a certificate of insurance for two thousand dollars, payable at his death to the plaintiff, Iva P. Cox.

On the 31st day of July, 1906, the Fraternal Home and defendant Kansas City Life Insurance Company entered into a certain agreement by the terms of which the latter agreed to reinsure the members holding certificates of insurance in the former. The agreement as set out in the record is quite lengthy and we shall only call attention in brief to those parts which relate to and control the disputed issues in the case. The controling parts are as follows: "This agreement made and entered into this 31st day of July, 1906, by and between the Kansas City Life Insurance Company, of Kansas City, Mo., a corporation organized and existing under and by virtue of the laws of the State of Missouri and engaged in the business of life insurance, hereinafter called the first party, and The Fraternal Home, a corporation organized and existing under and by virtue of the laws of the State of Missouri, hereinafter called the second party, and all policy or benefit certificate holders of the said second party who shall accept this contract subject to the terms and conditions hereof:

154 App—30

"Witnesseth: That said first party has agreed to accept as its policy holders each of the members of the said second party, who upon this day actually are and appear upon the books of the said second party as members thereof in good standing, and assumed for the benefit of such members such policies or-certificates of said second party as are now in full force and effect to the extent and upon the condition hereinafter mentioned.

"Now, therefore, the said first party for and in consideration of the execution hereof by the said second party and the fulfillment by it and by. each member and policy or certificate holder, accepting the same with all the terms and conditions hereof, doth hereby agree to receive as its policy holders all living members of said second party, who upon this date actually are and in addition thereto appear upon the books of said second party to be members thereof in good standing and doth hereby to the extent and in the manner hereinafter set forth and upon the terms and conditions hereof and not otherwise, agree to, and with said second party and each of the said members and certificate holders who shall accept, adopt and ratify this contract in its entirety, as follows:

"That it hereby assumes all the policy liabilities of the said second party that have accrued or may accrue after the date of this contract, but neither the property of the said first party nor the premium paid to it by any policy or certificate holder shall at any time or in any manner or to any extent be applicable or subject to be, used in payment or satisfaction of any obligation or liabilities of said second party whatsoever excepting for such liabilities hereinafter accruing as are herein expressly provided for.

"Said first party accepts and assumes liability upon all benefit certificates of second party upon the express conditions and provisions: First, no medical examination of any member now in good standing shall be required so long as all future premium payments are made

on or before the date when due; second, the members shall have the right, if they so elect, to keep and retain their present benefit certificates, and the first party shall within thirty days from date hereof mail to each member a reinsurance certificate to be attached to the benefit certificate now held, which reinsurance certificate shall be evidence of the assumption of liability by the first party hereto; third, that all of said benefit certificates or policies are assumed upon the ordinary or whole life participating plan, and to be. valued as such, considering the first year from date thereof as term insurance, and the premium payment rates herein agreed to are guaranteed by the first party to remain level during the whole term of life, each member's rate to be based upon age at date of benefit certificate, issued by the second party hereto and now held by said member."

At the date of the agreement the name of Cox, the insured, appeared upon the books of the Fraternal Home as a member in good standing, but at that time he had changed his residence from Pattonsburg to the State of Kansas, and did not receive notice of the said agreement of reinsurance, but continued to pay his dues to Mr. N. G. Ellis, a local collector of the Fraternal Home up to November, 1906. On the 29th day of December, 1906, he wrote to the Fraternal Home at Hamilton wherein he stated that he had supposed everything was right until about the 1st of that month, when he received a letter from Ellis who had removed to Colorado, and notifying him that he had quit the company and returning the money he had sent him. He requested to know if the company was still in good standing and wanted him to send in his dues for November and December, and that he would do so if required. He closed his letter as follows: "I hear a great deal about the K. C. Life buying out the Home. Please let me hear from you at your earliest convenience."

This letter came to the notice of W. W. Anderson, vice-president of the defendant company, who on Janu-

ary 8, 1907, wrote in answer substantially that if he, Cox, had receipts for payments made to Mr. Ellis up to November, and would forward them to him, the company would give him full credit for those receipts, otherwise he would be required to pay up all back dues from September the 1st, and that it would also be necessary for him to take a medical examination.

In reply Cox wrote on January 1, 1907, the following letter:

"CLEARWATER, KANSAS, 1—18, 1907.

The Kansas City Life, Kansas City, Mo.

Dear Sirs:—I received a letter from you a few days ago, in regard to insurance. I do not understand the deal between you people and the Fraternal Home, but I have paid the local collector of the Fraternal Home, Mr. N. G. Ellis, up to November, 1906. I have receipts for all but October—that he failed to send me, but I have an express money order receipt showing that I sent the money to him that month. I can send to Mr. Ellis and get a receipt. Please send me one of your blank policies. Also let me know who does your examining.

Hoping to hear from you soon,

Yours truly,

J. W. Cox."

To this letter Anderson wrote as follows:

"KANSAS CITY, MO., Jan. 21st, 1907.

"J. W. Cox, Clearwater, Kan.

"Dear Sir and Brother:—We acknowledge receipt of your communication of the 18th in relation to the reinstatement of your life insurance in this company. In our letter to you of sometime ago, we explained carefully the conditions effecting your policy on account of the reinsurance contract or the consolidation of the two companies. In order that you may have a full understanding of this matter, we enclose you a sample

assumption certificate upon which you will note the full conditions and provisions of the contract as effected by the consolidation.

"As we stated to you before, the policy is made practically an ordinary life participating, twenty years deferred dividend contract, upon which you pay two-thirds the actual premium in cash and allow the balance or one-third to be charged against your policy, thus giving you the advantage of the insurance at a very low rate as compared with the rate charged by all old line insurance companies who issue a guaranteed level premium contract.

"As before stated, we will allow you credit for the receipts you have from Mr. N. G. Ellis. Our record show you as being suspended from September 1st. It will require a re-examination and approval of same by our medical department for you to reinstate this insurance. We advise you to call upon Dr. Beal and have him make this report for us, charging his fee to the account of the company. At the same time you will please forward us the balance due up to February 1st, and upon receipt of same and approval of the examiner's report, we will place your policy in force, otherwise we will return any payments you may make on the same.

"If you wish to comply with the terms of reinstatement attach the enclosed certificate of assumption to your Fraternal Home policy, sign the acceptance certificate and return to us with your payment for all arrearages. Your monthly payment on this policy will be $2.60 and we will accept all receipts you hold from Mr. N. G. Ellis for payments made to him.

Very truly yours,<br>
W. W. ANDERSON,<br>
Vice-President."

Cox went before defendant's medical examiner and was examined, but failed to pass satisfactorily as a

proper person for insurance. In April, 1907, he died. The petition asks for an attorney's fee of five hundred dollars for vexatious refusal to pay loss.

The answer of defendant was a general denial. The plaintiff recovered the amount of the policy with six per cent interest from June 27th, 1907, and the further sum of five hundred dollars for defendant's refusal to pay loss as attorney's fee. The defendant appealed from the judgment.

The contract between the two companies plainly provided that any member of the Fraternal Home who was in good standing on the date of the agreement was entitled to the reinsurance provided for in the defendant company. And this right to reinsurance was unconditional. It is true the agreement provided that the applicants for reinsurance should comply with certain conditions, but such conditions were such as the applicants were required to perform in the future after they had obtained such reinsurance.

As a matter of course the agreement did not bind the members of the Fraternal Home association until they signified their assent thereto. As Cox had moved from Pattonsburg to Kansas, and did not know of the agreement, he continued to pay his regular dues to Ellis, the collector for the Pattonsburg Home, until he was informed by Ellis that he no longer was such collector. Soon thereafter he learned from the defendant's vice-president of the existence of the contract, and thereupon promptly notified defendant's said official of his desire to avail himself of the benefit of the reinsurance. Instead of defendant granting said request, he was notified that he had been suspended and that in order to obtain such reinsurance he must first undergo a medical examination.

Cox, the insured, acting honestly at all times, having paid in good faith his dues up to December, and offering to pay all arrearages up to date, was in our opinion entitled to reinsurance without such medical

examination. The contract specifically provides that no such examination shall be required of any member in good standing "so long as all future premium payments are made on or before the date when due." The *future premium payments* do not refer to payments due the Fraternal Home, but to payments of premiums to become due to the defendant company. The payment of such dues was not a condition precedent to the member's right of insurance without medical examination.

The agreement prohibited defendant from requiring that the insured be subjected to a medical examination before he could avail himself of the benefit of reinsurance, notwithstanding he may have failed after said date in paying his dues to the Fraternal Home association. All the defendant could exact from the applicant for reinsurance, was the payment of such dues.

The conduct of the insured throughout was characterized by an honest effort to meet all the requirements of the contract. He had paid his dues to the ex-collector for the Home, but when he found out that that person no longer had authority to receive them, and that his company had been absorbed by the defendant company, he promptly applied for reinsurance with an offer to pay all arrearages and to perform all the conditions of said agreement. An honest man could do no more, nor less, and it does not lie in the mouth of defendant to deny that he had performed or offered to perform every obligation imposed upon him by the contract in order to avail himself of its benefits.

The case is too plain for further comment.

Appellant contends that the court committed error in rendering judgment for a penalty on account of vexatious refusal to pay plaintiff's loss. First; because there was no evidence of vexatious refusal to pay the loss; and, second; because section 7068, Revised Statutes 1909, does not apply to fraternal benefit associations.

We are of the opinion that the refusal to pay the loss without litigation was evidence of a vexatious character, because as we view the case plaintiff's right to recover is undisputable and she ought not to have been subjected to the expense and vexation of a law suit in order to recover the insurance money. It was not necessary that plaintiff should prove by explicit evidence that the delay was vexatious. It was for the jury to say from all the facts and circumstances if it was so. [Keller v. Home Life Ins. Co., 198 Mo. 461.]

The defendant is not a fraternal benefit association and as such could not claim exemption from the provisions of the section, admitting that the section did not apply to such associations.

Fully believing that nothing more than complete justice has been done we affirm the judgment. All concur.