## OCCIDENTAL LIFE INS. CO. v. EILER.
### No. 11990.

Circuit Court of Appeals, Eighth Circuit.

Jan. 27, 1942.

Rehearing Denied March 7, 1942.

See 126 F.2d 429.

James C. Jones, Jr., of St. Louis, Mo. (James C. Jones, W. A. Welker, and Jones, Hocker, Gladney & Grand, all of St. Louis, Mo., on the brief), for appellant.

Frank L. Ramacciotti, of St. Louis, Mo. (Raymond E. LaDriere, of St. Louis, Mo., on the brief), for appellee.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

WOODROUGH, Circuit Judge.

This suit was brought by Sophie Eiler, the beneficiary named in a double indemnity insurance policy issued to her husband in his lifetime which was in full force and effect at the time of his death. The defendant insurance company had reinsured and assumed the contract of the original insurer and stood in its shoes as to liability. It had paid the amount of the life insurance benefit in the sum of $5,000, but had paid only $1,500 of the $5,000 accident insurance, and the suit was to recover the remaining $3,-500 under the accident insurance provisions of the policy and for attorney's fee and damages for vexatious refusal to pay. The plaintiff recovered judgment upon the trial before the court without a jury for the amount sued for, with interest and costs, and for $350 damages and $1,000 attorney's fee, and the insurance company appeals.

### Statement.

The policy sued on provided that if the plaintiff's husband died as the result of injury incurred through violent, external and accidental means, the insurer would pay her $5,000 in addition to the $5,000 agreed to be paid upon his death, and the proof was that he committed suicide while insane by shooting himself with a rifle. The plaintiff relied upon the controlling Missouri law that the suicide by shooting while insane was an accidental death incurred by violent and external means within the meaning of the policy. The defendant insurance company alleged in its answer that after the death of the insured a dispute arose between itself and the plaintiff as to whether or not the death of the insured was the result of an accidental bodily injury within the meaning of the policy and as to whether the plaintiff was entitled to the additional $5,000 under the accidental death benefit of the policy, and that it had offered and plaintiff had agreed to accept $1,500 in full settlement and discharge of all claim under the double indemnity or accidental benefit of the policy, and that in consideration of the payment to her of $1,500 she had executed a written release in full of all her claims. The release signed by her was set up in the answer and it was alleged that the payment constituted accord and satisfaction and that the release was a bar to the action.

In her reply to the answer the plaintiff denied that any dispute had ever arisen or existed between herself and the insurance company as to whether the death of her husband was the result of accidental bodily injury within the meaning of the policy, or as to whether the plaintiff was entitled to the additional $5,000 under the double indemnity provisions, or that she had agreed to accept $1,500 in full settlement and discharge of her claims, or that she had executed and delivered the alleged release, or that the payment of the $1,500 constituted accord and satisfaction. Although she admitted signing the paper and receiving the money, she denied that the money was accepted or the instrument signed in settlement of her claim. She alleged that, "after the death of her husband, the insured, she called at the office of the Guaranty Life Insurance Company, and defendant, Occidental Life Insurance Company, its successor, and there talked to their representative and agent in charge of said office, and advised him of the death of insured, and made proof thereof; that, at said time, and repeatedly thereafter, she told said representative and agent of said Guaranty Life Insurance Company, and defendant, Occidental Life Insurance Company, its successor, that insured was insane at the time of his death, and had been insane for several years prior thereto; that at said time plaintiff furnished defendant and said agent and representative with a coroner's certificate, which stated on its face, that the insured was insane at the time of his death, and had been for two years or more prior thereto; that at said time plaintiff also stated to defendant and said representative and agent that the insured had been confined to, and under treatment in, hospitals for insanity, and that doctors had recommended and advised plaintiff that the insured be permanently confined to a hospital for the insane because of his said condition of insanity, which was incurable, and she demanded payment in full of said sum of $5,000 due her under the accidental death or double indemnity benefit of said policy, but that defendant and said representative and agent stated to her that the company did not pay double indemnity under such circumstances.

"That thereafter she again called upon said representative and agent of said Guaranty Life Insurance Company, and defendant, Occidental Life Insurance Company, its

successor, and again stated to them the facts and circumstances of insured's death, as aforesaid, and again demanded payment of the $5,000 due her under the double indemnity or accidental death benefit of said policy, but that said representative and agent and defendant again informed her that the company did not pay double indemnity under such circumstances; that said representative and agent further stated to plaintiff that the Guaranty Life Insurance Company was being taken over and purchased by the defendant, Occidental Life Insurance Company, and that by reason thereof, said Guaranty Life Insurance Company would pay plaintiff the sum of $1,500; that, if plaintiff did not accept said sum of $1,500, she would receive nothing because the said Guaranty Life Insurance Company was going out of business; that said representations of defendant and its said representative and agent were material, false and untrue; that plaintiff relied on said false statements and representations, and being unable to ascertain the true facts with respect thereto, was misled thereby; that said false representations and statements were such as to mislead a person of ordinary prudence, and particularly plaintiff, and were intended to mislead and defraud plaintiff; that plaintiff, in reliance upon said false and untrue representations and statements of defendant and said agent and representative, signed a receipt for payment of the sum of $1,500, and accepted payment of said amount on account, but demanded, continued to demand, and still demands payment of the balance of said $5,000 due her under said accidental death or double indemnity benefit of said policy; that plaintiff never understood that said sum of $1,500 received by her was in full satisfaction and discharge of said policy; that she had no intention of acknowledging satisfaction of said policy, and never did acknowledge satisfaction of same; that said receipt was signed by her in ignorance of the fact that it purported to be a release, as alleged by the defendant, and because she was directed to do so by defendant and said representative and agent; that she never read or knew the purport of what she signed until the defendant set up in its answer a copy of an instrument purporting to be a release, and that she does not know whether or not said instrument is a true copy of the receipt filed by her; that, by reason of the aforesaid, said representative and agent of said Guaranty Life Insurance Company, and defendant, Occidental Life Insurance Company, its successor, perpetrated a fraud on plaintiff.

"That at the time of the death of the insured, and continuously for a period of about two and one-half years prior thereto, said insured had been insane; that during said period he had been under the care of doctors and physicians specializing in the care of insane persons, and had been confined to hospitals and other institutions for the care of insane persons; that during said period said insured was suffering from an incurable condition of insanity; that he had, on several occasions, threatened suicide, and that he died as a direct result of shooting himself with a rifle or gun while insane.

"That it is provided by the laws of Missouri, Revised Statutes, 1929, Section 5740 [Rev.St.1939, § 5851], as follows: 'In all suits upon policies of insurance on life hereafter issued by any company doing business in this state, to a citizen of this state, it shall be no defense that the insured committed suicide, unless it shall be shown to the satisfaction of the court or jury trying the cause, that the insured contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void.' Which statute was in full force and effect at the time of the death of the insured, and at the date of the issuance of said policy, as well as at all times herein mentioned.

"That it is also provided by the laws of the State of Missouri, as declared by its highest courts, in substance as follows:

"1. 'That so far as a provision of an accident policy attempts to limit, or purports to limit recovery of the face of the policy in cases of suicide, while insane, such provision is void as conflicting with Revised Statutes of Missouri, 1929, Section 5740.'

"2. 'That payment of a part of the indebtedness unquestionably due on a liquidated amount, is no consideration for a release of the balance of the indebtedness, and payment of a part upon a dispute raised in bad faith, and without any reasonable ground therefor in law or in fact, will avail nothing as a consideration for the release of the balance.'

"3. 'That the amount named in the face of a policy of insurance, upon the death of the insured, becomes a liquidated or fixed amount, unless a bona fide controversy exists, and a settlement for a lesser amount paid to the beneficiary and the release taken

for said lesser amount, is void, even in the absence of fraud.'

"4. 'That suicide, while insane, is an accident.'

"5. 'That everyone is presumed to know the law.' which laws and decisions were in full force and effect at the time of the accidental death of the insured, and on the date the said purported release was executed and payment of $1,500 made, as well as at all times herein mentioned.

"That at all times herein mentioned, defendant knew, having full and complete knowledge of the facts by reason of the proofs furnished by plaintiff, the statements evidenced in the coroner's certificate furnished said representative and defendant, plaintiff's statements to said representative and the Guaranty Life Insurance Company, and defendant, Occidental Life Insurance Company, its successor, and from other information available and in possession of the Guaranty Life Insurance Company, and defendant, and their representatives, that the insured committed suicide, while insane, and was insane at and prior to his death; that he had been confined to insane asylums and was under the care of psychiatrists and neurologists, as aforesaid; that, by reason thereof, said Guaranty Life Insurance Company, and defendant, Occidental Life Insurance Company, its successor, knew it was liable for and indebted to plaintiff for the full amount of $5,000, as provided by said accidental death or double indemnity provision of said policy; that said Guaranty Life Insurance Company, and defendant, Occidental Life Insurance Company, its successor, at all times also knew that no bona fide controversy ever existed between them and plaintiff on any ground whatsoever, but nevertheless willfully disputed payment of the full amount due plaintiff under said accidental death or double indemnity provision of said policy, and, in bad faith and without any reasonable grounds therefor, either in law or in fact, refused payment; that, at all times, said agent, said Guaranty Life Insurance Company, and defendant likewise knew the law applicable and stated herein, and that the insured's death was accidental; that, by reason of the aforesaid, the purported release, referred to by defendant in its answer, is without consideration and is fraudulent, and void at law for lack of consideration, and said release never existed in fact; that the payment to plaintiff of any sum less than the full $5,000, due as aforesaid, and the said purported release alleged to have been taken for said lesser amount, do not constitute accord and satisfaction."

After hearing the evidence the trial court found, i. a.,

"That the death of said Henry L. Eiler on October 23, 1936, resulted from a gunshot wound self-inflicted, and that at the time of said death and the infliction of said gunshot wound by himself, and for more than two years prior thereto, Henry L. Eiler was insane.

"That at the time of the death of the insured from a self-inflicted wound, and continuously for a period of more than two years prior thereto, said insured had been insane and had been under the care of doctors and physicians specializing in the care of insane persons, and he had been confined to the psychopathic department of the Alexian Brothers Hospital and was a patient in the Missouri State Sanatorium for the insane at Farmington, Missouri; that during said period of two years or more prior to his death, said insured was suffering from an incurable condition of insanity; that two of his sisters had been confined in said Missouri State Sanatorium for the insane at Farmington, Missouri, and that one of them had died a suicide, and that said sisters and Henry L. Eiler, the insured, were descendants of a common ancestor.

"That on or about October 29, 1936, Sophie Eiler, the plaintiff herein and the named beneficiary under said policy, furnished the General Agent in charge of the St. Louis office of the Guaranty Life Insurance Company of Davenport, Iowa, with proofs of death of said Henry L. Eiler and with a coroner's certificate issued by the coroner of St. Louis County, Missouri, which proofs of death and coroner's certificate showed on their face that said Henry L. Eiler had committed suicide, while insane, and was known to have been insane for two years or more prior to his death; that thereupon the general agent of said Guaranty Life Insurance Company of Davenport, Iowa, certified that he had read the statements contained in said proofs of death, and forwarded said proofs of death and coroner's certificate to the home office of the Guaranty Life Insurance Company of Davenport, Iowa.

"That on or about the 9th day of November, 1936, and at the time of the payment of the life or natural death benefit under said policy, the plaintiff demanded of the general

agent and representative of the Guaranty Life Insurance Company of Davenport, Iowa, the payment of the $5,000 accidental death benefit provided under the terms of said policy and shown on its face, but said general agent and representative refused to pay said accidental death benefit and, in the face of the information evidenced and shown on the face of the proofs of death and coroner's certificate, informed the plaintiff that the company did not pay double indemnity under such circumstances.

"That, nearly a year after the payment of said $5,000.00 life benefit under said policy, the plaintiff went to the St. Louis office of the Guaranty Life Insurance Company of Davenport, Iowa, and again conferred with the general agent in charge thereof and again informed said agent that the insured was insane at the time he took his life and had been insane for two years or more prior thereto, and plaintiff also informed said agent that the insured had been confined to and under treatment in hospitals for the insane, including Missouri State Hospital for the Insane at Farmington, Missouri, and plaintiff requested that said agent write to said hospital and determine the facts as to insured's insanity, which said agent and defendant failed to do; that neither said agent or defendant made any inquiry or investigation either then or at any other time to verify the insanity of insured at and prior to the time he took his life; that plaintiff then and there again demanded payment of said $5,000.00 accidental death benefit under said policy, but said agent again informed her that the company did not pay double indemnity under such circumstances and further stated to her that the Guaranty Life Insurance Company of Davenport, Iowa, was being taken over and purchased by the defendant, Occidental Life Insurance Company of Los Angeles, California, and by reason thereof said Guaranty Life Insurance Company of Davenport, Iowa, would pay plaintiff the sum of $1,500.00 and that said sum was all that the plaintiff would get or that the company would pay, and that said company was just giving the $1,500.00 to plaintiff; that said agent thereupon produced a two-page typewritten paper purporting to be a release, and after reading a few lines of same to plaintiff, a woman of little or no education or business experience, but not reading to her any part thereof indicating that said paper was a release, placed said paper before the plaintiff, with the first page thereof folded back so that plaintiff did not

and could not see it, and requested plaintiff to sign said paper on the second page thereof; that plaintiff never read said paper and same was not read or explained to her and she did not know what she signed; that a few days thereafter she received a check through the mail for the sum of $1,500.00, and accepted same; that at the time of the receipt and acceptance of said sum of $1,500.00 and the execution of the aforesaid paper, and at all other times, plaintiff demanded and continued to demand payment of the balance of $3,500.00 due under said accidental death provision of said policy, and that said agent refused, and defendant continued to refuse and still refuses to pay plaintiff said $3,500.00, without any reasonable ground therefor.

"That neither at the time of the receipt and acceptance of said $1,500.00 by said Sophie Eiler, or at any other time was there any bona fide dispute or controversy between Sophie Eiler and the Guaranty Life Insurance Company of Davenport, Iowa, and the defendant herein, as to the fact of the death of said Henry L. Eiler by suicide or as to his insanity at the time of said suicide or as to the liability of the Guaranty Life Insurance Company of Davenport, Iowa, or of the defendant Occidental Life Insurance Company of Los Angeles, California, to pay said Sophie Eiler the full $5,000.00 accidental benefit under said policy, which is a liquidated and fixed amount under the terms and provisions of said policy of insurance.

"That plaintiff at no time either agreed to or did accept from the Guaranty Life Insurance Company of Davenport, Iowa, the said sum of $1,500.00 as a full settlement and discharge of her claim under the double indemnity provision of said policy, and that the payment of said sum to plaintiff did not constitute an accord and satisfaction by plaintiff of her claim under the double indemnity or accidental death benefit provisions of said policy.

"That the death of the insured occurred before he attained the age of 60 years and while he was 57 years of age, and there had not been any claim for total permanent disability benefits made or allowed under said policy; that the death of the insured resulted directly and independently of all other causes from bodily injuries, effected solely through external, violent and accidental means within 90 days from the occurrence of such accident; that the accident was evidenced by a wound on the exterior of the

insured's body, and his death did not result from military or naval service in time of war nor from an aeronautic or submarine expedition."

Among the conclusions of law were the following:

"That the payment of $1,500.00 to plaintiff under the circumstances shown in evidence did not constitute or amount to an accord and satisfaction by plaintiff under the accidental benefit provision of said policy and was not a bar to this suit.

"That the paper executed and signed by plaintiff at the time of the acceptance of the $1,500.00 payment, which purported to be a release, was and is null and void and of no effect whatever as a claimed release or satisfaction in full of the rights of the plaintiff to the accidental death benefits under said policy of insurance.

"That the tender or payment into Court of the amount of $1,500.00 paid by the Guaranty Life Insurance Company of Davenport, Iowa, to the plaintiff, was and is unnecessary, and the offer to give credit for said amount as shown by the plaintiff's pleadings is sufficient.

"That suicide while insane is an accidental death under the terms of the policy in suit as construed under the law of Missouri.

"That payment of a part of the indebtedness unquestionably due on a liquidated claim is no consideration for a release of the balance of the indebtedness, and payment of a part upon a dispute raised in bad faith, and without any reasonable ground therefor, in law or in fact, will avail nothing as a consideration for a release of the balance; that no bona fide controversy or dispute existed in this case as to the amount to be paid or as to the death of insured by a self-inflicted wound, or as to the fact that the insured was then and had been for two years incurably insane.

"That where the amount is fixed or liquidated, and no bona fide controversy exists, the mere acceptance of a sum less than the whole, although expressly stated to be in discharge of the whole, will not discharge the debt since there is no consideration.

"That no bona fide controversy existed in this case, as shown by the evidence, and in the absence of a bona fide controversy existing between the beneficiary and the insurer, a settlement for a less amount than double the face of the policy is void for lack of consideration.

"That refusal of the defendant to pay said balance of $3,500.00 due, was willful and vexatious and without reasonable cause, and punitive damages and attorneys' fees may be assessed."

The fact findings of the court are fully sustained by the evidence.

## Opinion

The conclusions of law arrived at by the trial court are also fully sustained by the Missouri decisions. It is well settled in Missouri that the amount promised on the face of an insurance policy must be deemed the liquidated amount of the insurance company's debt when the contingency insured against by the policy's terms occurs. The payment of a part of the debt unquestionably due on such liquidated debt is no consideration for release of the balance of the debt. In the absence of a bona fide controversy existing between the beneficiary and the insurer the payment by the insurer of a part of its debt upon a dispute asserted by it in bad faith and without any reasonable ground, either in law or fact, constitutes no consideration for the release or settlement of the balance. A release taken by the insurer under such circumstances for less than it owes is void and the beneficiary suing for the balance need not tender or pay into court the amount paid. It is sufficient that the recovery be reduced to the extent of the payment made. Yancey v. Central Mutual Ins. Ass'n, Mo.App., 77 S.W.2d 149; Crowder v. Continental Cas. Co., 115 Mo.App. 535, 91 S.W. 1016; Fowler v. Mutual Ins. Ass'n, Mo.App., 86 S.W.2d 946; Enright v. Schaden, Mo.Sup., 242 S.W. 89; Berry v. Detroit Cas. Co., Mo.App. 300 S.W. 1026; Sappington v. Central Mutual Life Ins. Ass'n, 229 Mo.App. 222, 77 S.W.2d 140; Price v. Cannon, 3 Mo. 453; Barrett v. Kern, 141 Mo.App. 5, 121 S.W. 774; Schreiber v. Central Mutual Life Ins. Co., Mo. App., 108 S.W.2d 1052.

The points argued for the appellant (1) that it was a condition precedent of plaintiff's right to recover that she should tender back the $1,500 which she had received; (2) that the District Court erred in finding that the insured committed suicide while insane, and (3) that the court erred in finding and concluding that the insurance company's refusal to pay was vexatious, are shown by study of the record and the precedents to be without merit.

The Missouri cases cited by appellant to the first point are (1) State v. Shain,

339 Mo. 903, 98 S.W.2d 597, in which the Supreme Court of Missouri, considering the effect of a release, stated as a fact that "There existed, therefore a bona fide dispute between Jackson [the insured] [1] and relator [the insurance company] [1] as a basis of compromise settlement." No such bona fide dispute existed in this case. (2) Malkmus v. St. Louis Portland Cement Company, 150 Mo.App. 446, 131 S.W. 148, where the plaintiff testified that he did not intend to sign the release in evidence but thought he was receipting for a gratuity of the money paid him. He made no tender and his recovery for damages for his personal injuries was affirmed. (3) Hancock v. Blackwell, 139 Mo. 440, 41 S.W. 205, was an action for damages for slander where the plaintiff had given a release. "She admitted that she signed it knowing what it was, its purpose and effect" but sought to avoid it on the ground of undue influence and fraudulent representations and the court held that she was required to have it set aside before she could sue at law on the slander for unliquidated damages. (4) Girard v. St. Louis Car Wheel Company, 123 Mo. 358, 27 S.W. 648, 25 L.R.A. 514, 45 Am.St.Rep. 556, an action for damages for personal injuries in which the plaintiff's recovery was sustained notwithstanding a release and no tender to restore the amount paid for it, and (5) Alexander v. Grand Avenue Ry. Co., 54 Mo.App. 66, involving a release of a claim for unliquidated damages where the court found that "all liability was denied" by the defendant—so far as appears in perfect good faith.

■ The main Missouri case cited by appellant to its second point is Gates v. Travelers' Insurance Co., Mo.App., 218 S. W. 927, which decision, as pointed out by counsel for appellee, had been expressly overruled and departed from by the Supreme Court of Missouri in Rodgers v. Travelers Ins. Co., 311 Mo. 249, 278 S.W. 368. Appellant has also cited the Rodgers case, but its facts present complete contrast to those in the case at bar. In this case the insured left a scrawled writing, found near his body, which read "to nervous, could not stand it any longer nobodys Fault Bury me at Mattese cemetery Father Schlattmann Fundler undertaker Did not take time to

wash", and that fact was included with the other established facts in the hypothetical question propounded to the experts who gave their opinion that he was insane at the time of his suicide. The circumstance of the writing was insufficient to raise any reasonable doubt as to the insanity. "That suicide by an insane person is a death by accidental means is a proposition abundantly sustained by authority both state and federal." Aufrichtig v. Columbian National Life Ins. Co., 298 Mo. 1, 249 S.W. 912, 914. Brunswick v. Standard Accident Ins. Co., 278 Mo. 154, 213 S.W. 45, 7 A.L.R. 1213.

■ As to the third point, the assertion of error in the judgment for vexatious refusal to pay, it need only be said that the facts found brought the case squarely within the statute, R.S.Mo.1929, § 5929, and the Missouri decisions, Exchange Bank of Novinger v. Turner, et al., 321 Mo. 1104, 14 S.W.2d 425; Friedman v. State Mutual Life Assurance Co., Mo.App., 108 S.W.2d 156; Clair et al. v. American Bankers Insurance Co., Mo.App., 137 S.W.2d 969; Cox v. Kansas City Life Ins. Co., 154 Mo.App. 464, 135 S.W. 1013; § 6040, R.S.Mo.1939.

Matters argued which were not raised or passed on in the trial court, although carefully noted and found to be without merit, are not discussed. New York Life Insurance Co. v. Calhoun, 8 Cir., 114 F.2d 526.

■ As we are satisfied that the judgment appealed from was without error, it should be affirmed. Consideration of the entire appeal proceedings has also convinced that it is vexatious within the meaning of Section 1230, Revised Statutes of Missouri, 1939, as construed by Missouri decisions. Bonzon v. Metropolitan Life Ins. Co., Mo. App., 143 S.W.2d 336; Boillot v. Income Guaranty Co., Mo.App., 124 S.W.2d 608; Enright v. Hale Petroleum Co., Mo.Sup., 250 S.W. 908; Polski v. City of St. Louis et al., 264 Mo. 458, 175 S.W. 197, and it is accordingly the duty of this court to award damages to appellee on that account in an amount equal to ten percent of the amount of the judgment complained of, which ten percent we find to be reasonable. See Rule 31, paragraph 2, of the Rules of this Court.

Affirmed with direction to the Clerk of this Court to enter award of damages in accord with the opinion.

---

[1] Interpolated.