OF THE

## STATE OF MISSOURI

AT THE

## APRIL TERM, 1916.

(*Continued from Vol. 267.*)

FRANK L. BOWMAN, Receiver of FRATERNAL
HOME, v. WILLIAM W. ANDERSON et al.,
Appellants.

Division Two, May 31, 1916.

1. **ULTRA VIRES: Fraternal Beneficiary Association: Transfer of Assets.** An agreement made by an incorporated fraternal beneficiary association with an old-line insurance company, whereby all the assets of the association are transferred to the company and the certificate holders are to receive ordinary-life policies in the company for equal amounts, without medical examination, and accepted by the majority of the fraternity members, is *ultra vires*, and null and void.

2. **FRATERNAL BENEFICIARY ASSOCIATION: Transfer of Assets to Old-Line Company: Good Faith.** Where at the time the agreement of the directors of a fraternal beneficiary association to transfer all its assets to an old-line insurance company for the payment of its debts and to obtain, without medical examination, ordinary life insurance for its members, was made, the association's membership and assets were larger than ever before, the receipts for the previous month were larger, the president became vice-president of the company at a salary of $2000, and the secretary became its assistant secretary, and the only claim for justifying the transfer is

Bowman v. Anderson.

that the death losses for the preceding month were more than twice the income, but the evidence shows that such a transfer and agreement had been discussed for a year prior thereto, and all knowledge of it kept from all the subordinate lodges, even from the local lodge of which they were members, it will not be held that the agreement was made in good faith.

3. ———: ———: **To Pay Debts: Ultra Vires.** It is never *ultra vires* of a corporation to provide for the payment of its valid debts so far as its assets are available for that purpose. Although the directors of a fraternal beneficiary association cannot make a valid agreement by which its assets, in addition to the payment of its debts, are to be applied to other purposes foreign to its charter, such as the issuance to its certificate holders, without medical examination, of ordinary life policies in equal amounts, by the transferee, an old-line insurance company, whereupon the association is to cease to do business, that agreement, in so far as it results ultimately in the payment of the valid liabilities of the association, will not be disturbed; but in a suit against the directors by the receiver of the association to recover the assets, they will be credited with so much thereof as were used by the transferee company to pay valid debts of the association already accrued at the time the transfer was made.

4. ———: ———: ———: **Proof of Death Losses.** It is not necessary to the validity of a mortuary claim against a fraternal beneficiary association that the board of directors should first allow the claim. If the claim had actually accrued prior to a wrongful transfer of the association's assets to an old-line insurance company for the payment of debts and that company paid it, the directors, in a suit against them by the receiver of the association for a recovery of the assets, should be allowed credit for the amount paid by the transferree in discharge of the claim, whether or not it had ever been formally approved by them.

5. ———: ———: ———: ———: **Provided for in Transfer Contract.** A provision made in the contract executed by the directors of a fraternal beneficiary association whereby its assets are transferred to an old-line insurance company, for the payment of certain death losses therein specified, is a sufficient allowance of the claims by the board of directors.

6. ———: ———: ———: **Proof of Prior Death Loss Subsequent to Transfer: Affidavits.** Affidavits of the death of a certificate holder who had died prior to the transfer of the assets of a fraternal beneficiary association to an old-line insurance company for the payment of its debts and other purposes, made by the beneficiary, officers of the local lodge, the attendant physician and undertaker, are competent for the purpose of

showing that such proofs were made, but, being *ex parte*, are not competent to prove the member's death; but being competent for the one purpose, if no request was made to restrict their probative force to that purpose, they will be held competent for all purposes, and being such proof as the board of directors customarily received as their basis for paying a death loss, will be considered by the court for the same purpose.

7. **EVIDENCE: Competency for One Purpose: When Competent for All.** Evidence which is competent for one purpose, if no request is made, by instructions or otherwise, that it be restricted to that purpose alone, should be considered for all purposes and given such probative force as it imports.

8. **FRATERNAL BENEFICIARY ASSOCIATION: Transfer of Assets to Pay Debts: No Allegation of Specific Claims Paid.** In a suit by the receiver of a fraternal beneficiary association against its directors to recover assets transferred by them to an old-line insurance company to pay debts, the failure of the answer to specifically claim credit for a certain death loss which had accrued prior to the transfer, though no proofs thereof were made until afterwards, will not preclude an allowance of that claim, if the answer avers that the transferee had paid out more money on the liabilities of the association than the assets received by it amounted to. If plaintiff desired a more specific statement he should have made the necessary motion.

9. ———: ———: **Death Loss Accruing After Transfer.** In such a suit, where the transferee company agreed to assume liability for the payment of certificates of all fraternity members who would accept the reinsurance arrangement, a claim arising on the certificate of a member who died some months after the transfer, and who had accepted the terms of the agreement and was denied a policy by the old-line company, contrary to the agreement, was the debt of such company, and if paid as the result of a suit against the company, the directors should not be credited with the amount thereof.

10. ———: ———: **Persistent Members.** Where the fraternal beneficiary association did not become defunct upon the transfer of its assets by its directors to an old-line insurance company, under an agreement whereby all its members who wished might have ordinary-life policies in that company, and only a majority accepted that agreement, those who did not accept were persistent members and the assets belong to them, and in a suit by the receiver to recover the assets the directors cannot have credit for the share of those who did accept of the reinsurance arrangement, in the absence of any allegation that

they had thereby received their proportionate share, nor even then in the absence of any showing of their respective ages, the amount of their certificates, and the amount of the monthly assessments paid by them.

Appeal from Buchanan Circuit Court.—*Hon. W. K. Amick*, Judge.

REVERSED AND REMANDED (*with directions*).

*Ed. E. Yates, W. M. Williams* and *Perry S. Rader* for appellants.

(1)    This case cannot be adjudged by the rule of *ultra vires* without disregarding the principles of justice. That rule does not afford a reasonable guide by which to determine the rights of the parties hereto. "The doctrine of a want of power to contract cannot be invoked to aid a party to perpetrate wrong and injustice." (a) It is of the gravest doubt whether the transfer of the assets and business of the Fraternal Home to the Kansas City Life was an *ultra vires* act. The association had no stockholders; it had no capital stock; it was organized for the purpose of providing insurance for the beneficiaries of members (their widows, husbands and children); the funds were transferred for the purpose of paying mortuary claims that had already accrued or might accrue within the next thirty days, before members had had opportunity to accept the contract of reinsurance; every such mortuary claim was paid by the Kansas City Life, and at the time suit was brought there were no unpaid mortuary claims or other debts. The Fraternal Home was insolvent; its primary purpose was to provide insurance for its members; its insolvency made it impossible for it of itself to further fulfill that purpose; it could fulfill it only by entering into a contract of reinsurance with some solvent company; and fifty-seven per cent, or 3769 out of

6610, of its then members accepted and ratified the transfer contract; and the funds transferred were used for the very purpose for which they would have been used had there been no transfer. The doctrine of *ultra vires,* when invoked for or against a corporation, should not be allowed to prevail where it would defeat the ends of justice or work a legal wrong. Railroad v. McCarthy, 96 U. S. 267; Cass Co. v. Ins. Co., 188 Mo. 16; Bank v. Trust Co., 187 Mo. 526; Louis v. Am. S. & L. Assn., 98 Wis. 224. Though the directors transfer all the assets of a corporation to a trustee for the payment of its debts, and thereby work its political death, if it was done in good faith and with due regard to the interest of all the stockholders, the act will not be held to be invalid or actionable. I Moritz on Private Corporations (2 Ed.), sec. 513; Ringue v. Biscoe, 13 Ark. 575; Hat Block Co. v. Machine Co., 90 N. Y. 613; DeCamp v. Alwood, 52 Ind. 468; Arms Co. v. Barlow, 63 N. Y. 70; 29 Am. & Eng. Ency. Law, p. 48, par. 5; Hutchinson v. Green, 91 Mo. 375; Paper Co. v. Ptg. Co., 144 Mo. 335; Descombes v. Wood, 91 Mo. 204; Sherman v. Harbin, 124 Iowa, 646. (b) Before plaintiff can recover he must show a concurrence of a legal wrong and of damages resulting therefrom. In the present case, it must not only be shown that the transfer of the assets of the Fraternal Home to the Kansas City Life was an *ultra vires* act, and a misappropriation of its funds; but that the Home sustained a loss thereby and therefrom. Rex v. Commissioners, 8 B. & Co. 335, 15 E. C. L. 237; 8 Am. & Eng. Ency. Law, p. 560; North Vernon v. Voegler, 103 Ind. 319; Wittich v. Bank, 20 Fla. 849. The transfer of the assets of the Fraternal Home to the Kansas City Life resulted in no loss to the Home or any of its members. The money was used for the very purposes for which it would have been used had there been no transfer to pay the thirteen claims named in the contract,

the Bookmiller claim and the Cox claim. The company was insolvent, and even if the transfer had not been made no mortuary claims could have been paid after a few months more of dying existence. All mortuary claims that had accrued before the 2841 dissenting members abandoned the Fraternal Home have been paid. The 3769 members are not complaining. (c) Even if the transfer was *ultra vires*, and resulted in the political death of the Fraternal Home, the directors are not liable. They profited not a cent by the transfer. They made the transfer in good faith; it was a wise arrangement, and resulted in a real advantage to the 3769 who accepted it, and no harm to these who did not. The transfer contemplated that the debts would be paid, and they were paid. At the time the transfer was made none of the 2841 dissenting members had any valid claim against the Home, mature, inchoate or potential. If they had sued for the money then in the hands of the Fraternal Home, no part of it could have been returned to them, then or at any time prior to the decree of dissolution in November, 1908, because it had not been raised for them, but to pay mortuary claims—the purpose for which it was used. Sherman v. Harbin, 124 Iowa, 646; 4 Sutherland·on Damages (3 Ed.), sec. 1141; 3 Cook on Corporations (7 Ed.), p. 2374, sec. 702; Farr v. Bank, 87 Wis. 223; 28 Am. & Eng. Ency. Law, p. 736; State v. Kelley, 78 Kan. 44; Tripp v. Grouner, 60 Ill. 417. (2) A right may exist to pursue the property where an *ultra vires* contract is made by directors, and yet the directors may not be liable for damages for an honest but mistaken exercise of their best judgment. Watt's Appeal, 78 Pa. St. 370; Hodges v. Screw Co., 1 R. I. 312; Spering's Appeal, 71 Pa. St. 24; Williams v. McDonald, 37 N. J. Eq. 409; 3 Cook on Corporations (7 Ed.), p. 2374; 4 Sutherland on Damages .(3 Ed.), sec. 1141; Farr v. Bank, 87 Wis. 223. (3) The Kansas City Life Insurance

Company was solvent and amply able to carry out its contracts. There would have been no difficulty in pursuing the property if plaintiff desired to avoid the contract on the ground that it was *ultra vires*. 3 Cook on Corporations (7 Ed.), p. 2374. (4) The referee's conclusion of law that there could be no recovery for the $12,750 turned over by the Fraternal Home to the Kansas City Life Insurance Company and actually used by the latter to pay death claims then existing against the Fraternal Home, which the referee finds as a fact had been properly approved, was correct. This money was owing by the Fraternal Home to the claimants. The corporation was not injured by the act of defendants in paying claims through the Kansas City Life Insurance Company instead of directly to the claimants. 4 Sutherland on Damages (3 Ed.), sec. 1141; State v. Kelly, 78 Kan. 44; Valle's Heirs v. Fleming's Heirs, 29 Mo. 157; Turner v. Johnson, 95 Mo. 451; 8 Am. & Eng. Ency. Law, p. 560; Tripp v. Grouner, 60 Ill. 417. (5) The referee erred in recommending and the court erred in awarding, judgment against defendants for the amount paid in the Bookmiller claim. The liability of the Fraternal Home was not dependent upon the approval of the claim by the board of directors. Such a rule would prohibit the payment of a death claim if the board rejected it, although the courts might find it to be valid. (6) The court erred in rendering judgment for the amount of the Cox claim. If the Fraternal Home repudiated the transfer to and contract with the Kansas City Life Insurance Company, it should remain bound upon its own contract with Cox and the payment operated for its benefit. (7) There are no outstanding debts or claims of any kind against the Fraternal Home. The suit by the receiver can only inure to the benefit of the members of the beneficiary association, of whom there were 6610 at the time of the

transfer. Of these members 3769 ratified the contract and accepted the provisions made for them, and thereby received the benefit of their full proportion of the assigned assets. They cannot now be heard to assert any right or claim to said funds. They have in legal effect received their part. Plaintiff cannot recover for them what they could not collect for themselves. Insurance Commissioner v. Provident Aid Society, 89 Me. 413.

*D. E. Adams* and *W. M. Fitch* for respondent.

(1) The title to all property of the Fraternal Home vested in the plaintiff as receiver thereof immediately upon his appointment and qualification as such; it then became and was his right and duty to sue for and recover all of the property, money and assets belonging to it or wrongfully converted or diverted by its officers or others. Sec. 1407, R. S. 1899; Sec. 3444, R. S. 1909; 29 Cyc. 54; Maynard v. Bond, 67 Mo. 315; State ex rel. v. Reynolds, 209 Mo. 161, 173; Wehrs v. Sullivan, 217 Mo. 167; Bank v. Hill, 148 Mo. 380; Stone v. Rotman, 183 Mo. 552. (2) The defendants as officers of the Fraternal Home (and now their intestates) had no power or authority to transfer its assets to the Kansas City Life Insurance Company, or to terminate the business of the Fraternal Home under the facts of this case; their acts in so doing were *ultra vires* and void. Feld v. Inv. Co., 123 Mo. 603; Thompson v. Greeley, 107 Mo. 590; Heineman v. Marshall, 117 Mo. App. 546; Knapp v. Golden Cross, 118 S. W. (Tenn.) 390; Clark v. Brown, 108 S. W. (Tex.) 421; Allison v. Fire Ins. Co., 81 Neb. 494; Fire Ins. Co. v. Schwaelder, 44 Atl. (N. J. E.) 769; Grand Lodge K. P. v. Germania Lodge, 56 N. J. Eq. 63; Lodge v. Verein, 56 N. J. E. 78; Trans. Co. v. Car Co., 139 U. S. 24; Huber v. Martin, 105 N. W. (Wis.) 1031; Sauerhering v. Reping, 119 N. W.

(Wis.) 184; Star v. Bankers' Union, 81 Neb. 377; Allison v. Fidelity Mut. Co., 81 Neb. 494; Temp. Mut. Ben. Assn. v. Home Fr. Soc., 197 Pa. 38; Schwartzwaelder v. Ins. Co., 59 N. J. E. 589; Park College v. Atty.-Gen., 228 Mo. 514; 10 Cyc. 1146; 1 Thomp. Corp., sec. 315. (3) The defendants are jointly and personally liable for the property, funds and assets of the Fraternal Home which they, as the members of the board of directors and as the supreme officers of the Fraternal Home, assigned and delivered to the Kansas City Life Insurance Company. 10 Cyc. 801 (17-c), and note; 21 Am. & Eng. Ency. Law (2 Ed.), 876; Ward v. Davidson, 89 Mo. 445; Fougerey v. Cord, 50 N. J. E. 185; Hilles v. Parish, 14 N. J. E. 380; 3 Pom. Eq. Jur., secs. 1061, 1062, 1065, 1066, 1068, 1075, 1078, 1079, 1080; Lyons v. Corder, 253 Mo. 539; Brinkerhoff v. Roosevelt, 74 C. C. A. 498; Wilkinson v. Dodd, 7 Atl. (N. J.) 337; Acker Co. v. McGaw, 68 Atl. 17; Railroad v. Humes, 60 Atl. (Pa.) 908; Bosworth v. Allen, 168 N. W. 167; Bowers v. Male, 78 N. E. 577; Huber v. Martin, 105 N. W. (Wis.) 1031; Ashville Lbr. Co. v. Hyde, 172 Fed. 730; Pencilla v. Ins. Co., 74 Minn. 67; McIver v. Hardware Co., 144 N. C. 478; Linderman v. Rusk, 125 Wis. 216; Wineburgh v. Advertising Co., 173 Mass. 60; Grand Lodge v. Germania Lodge, 56 N. J. E. 63. (4) The defendants as supreme officers and directors of the Fraternal Home, under the laws of the order, were trustees of an express trust of all money that came to their hands, with no powers or authority over such moneys except as is provided in and by the laws of the order. This power was a personal trust and of such nature that it could not be delegated, neither could they delegate the power or authority to pass upon or allow claims against the Fraternal Home. 3 Cook, Corps. (7 Ed.), sec. 713-a; 3 Pomeroy, Eq. Jur., sec. 1068; 22 Cyc. 1414; Schubert Lodge v. Schubert, 56 N. J. E. 78; K. P. v. Germania Lodge,

56 N. J. E. 63; Kane v. K. C., 84 Conn. 96; Grand Court v. Hodel, 74 Wash. 314; Palliham v. Reveley, 181 Mo. 622; Bank v. Hill, 148 Mo. 380; Burchard v. Western Assn., 123 S. W. 973; 28 Am. & Eng. Ency.. Law (2 Ed.), 989; 21 Am. & Eng. Ency. Law (2 Ed.), 856-976, 271; Seehorn v. Cath. Knights, 95 Mo. App. 233; McCoy v. Ins. Co., 87 Mo. App. 73; Garretson v. Eq. Life End. Assn., 93 Iowa, 402. (5) By accepting the offer of the Kansas City Life Insurance Company to carry their certificates of insurance issued by the Fraternal Home, such certificate holders so accepting ceased to be members of the Fraternal Home from the date their certificates were so accepted by the Kansas City Life Insurance Company. In law such members so transferring their insurance stand in law as seceding from the Fraternal Home. Huber v. Martin, 105 N. W. (Wis.) 1031; Lodge v. Verein, 56 N. J. E. 78; Grand Lodge v. Germania Lodge, 56 N. J. E. 63; Lodge v. Bransch, 256 Ill. 185, 192; Gross Lodge v. Wolfer, 42 Colo. 393; State Council v. Sharp, 38 N. J. E. 24; Ahlendorf v. Barkous, 20 Ind. App. 657; McFadden v. Murphy, 149 Mass, 341; Altman v. Benz, 27 N. J. E. 331; Grand Court v. Hodel, 74 Wash. 314; Polish Falcons v. Kubiak, 238 Pa. 464; Gross Lodge v. Brausch, 256 Ill. 185; Gorman v. O'Connor, 155 Pa. 239; Kayley v. McCourt, 235 Pa. 304; 29 Cyc. 30. (6) Defendants are not entitled to be subrogated to, or credited with, any claim paid by the Kansas City Life Insurance Company. Subrogation is a right by which a party secondarily liable pays the debt of another to protect some right or interest or discharge his obligation to the claimant; it enables the secondary debtor to act before his interests and rights are sacrificed. No such principle or rights on behalf of defendants appears in this record by reason of the Kansas City Life Insurance Company paying any of the claims mentioned in evidence. 6 Pomeroy, Eq. Jur., secs. 920-925; Bispham,

Equity (5 Ed.), sec. 335; 27 Am. & Eng. Ency. Law
(2 Ed.), 255; Capen v. Garrison, 193 Mo. 335; Sud-
dath v. Gallagher, 126 Mo. App. 393; Walderein v.
Loebig, 183 Mo. 372; Bunn v. Lindsay, 95 Mo. 250;
North v. Highleyman, 88 Mo. 621. (7) The powers of
officers of a mutual domestic insurance company are
more limited than the powers possessed by like of-
ficers of stock corporations. Lamb v. Ins. Co., 119
N. W. 1048. (8) Corporations have only such powers
as are expressed in their charters, or necessarily im-
plied therein. Blair v. Ins. Co., 10 Mo. 559; State
ex rel. v. Murphy, 130 Mo. 10, 170 U. S. 78; State ex.
rel. v. O'Rear, 144 Mo. 157; State ex rel. v. Lincoln
Tr. Co., 144 Mo. 562; Watson Seminary v. Pike Co.
Ct., 149 Mo. 57; Dartmouth College v. Woodward, 4
Wheat. 636. (9) The laws of the Fraternal Home
required the acts of its board of directors to be made
a matter of record, and especially so in establishing
liability for death losses. No such record was made
in this case of any death losses. Therefore, there
was no legal evidence to show that any of the alleged
death claims were liabilities of the Fraternal Home.
The proofs were wrongfully admitted in evidence by
the referee, and were properly rejected by the trial
court on the exception and objection of the plaintiff.
Miller v. Assurance Co., 233 Mo. 91. Under the char-
ter powers of the Fraternal Home it was required
by the laws of its existence to keep a record of its
proceedings. Sec. 1402, R. S. 1899 (Sec. 3440, R. S.
1909).

ROY, C.—The plaintiff, Frank L. Bowman, re-
ceiver of the Fraternal Home, a fraternal beneficial
association, incorporated, recovered judgment against
William W. Anderson, Frank Clark, Margaret Tilley,
administratrix of Hiram Tilley, deceased, and Elsie
Sanderson, administratrix of Charles D. Sanderson,
deceased, for $33,414.95. Defendants have appealed.

Since the appeal, defendant Frank Clark died, and the cause has been revived in the name of Netta L. Clark, his administratrix.

The Fraternal Home began business in 1899 with its principal office at Hamilton, Caldwell County. Anderson, Clark, Tilley and Sanderson constituted its first board of supreme directors. Anderson was president, Clark vice-president, Tilley treasurer, and C. Norman Sears secretary. The by-laws provided:

"If the application is accepted by the Supreme Medical Director, a benefit certificate shall be issued, signed by the Supreme President and the Supreme Secretary, for such an amount as the Supreme Medical Director shall authorize, but not to exceed $2000 from eighteen to and including forty-five years of age at nearest birthday; $1000 from forty-five to and including fifty years of age at nearest birthday, and $500 from fifty to and including fifty-five years of age at nearest birthday.

"*Death Proofs.*—If a member is removed by death, the President and Secretary of his lodge shall investigate and promptly report to the Supreme Secretary the circumstances, date and cause of death. Upon receipt of such report the Supreme Secretary shall send to the Subordinate Lodge secretary the blank forms prescribed by the Board of Directors to be executed by the proper persons to make proofs of death and claimant's legal right to benefit, satisfactory to the Board of Directors. All such proofs to be acted upon by the Board of Directors must be executed in the form prescribed by said Board of Directors, and upon blanks furnished by the Supreme Secretary. After being properly executed, received, passed upon and allowed by the Board of Directors, the Supreme Secretary, as soon as the funds on hand will justify, shall draw an order on the Supreme Treasurer, attested by the Supreme President, payable to the order of the person or persons found legally entitled there-

to, for the amount due upon benefit certificate of the deceased, and the Supreme Secretary shall see that the same is delivered to the person who is entitled thereto, and the same shall be paid by the Supreme Treasurer upon surrender to him of the benefit certificate of deceased member, properly receipted.''

On July 31, 1906, the membership of the Fraternal Home was 6610, and was greater than it had ever been previously, so far as the record shows. The cash receipts for June, 1906, were $6819.30 and for July $6693.08, each of those monthly receipts being greater than for any previous month. At that time it had on hand assets as follows:

Real estate mortgage loans .......... $10,250.00
Cash ............................. 7,824.78
_____
$18,074.78

So far as the evidence shows, the amount of the cash and bills receivable had never been greater than on July 31, 1906, except in April preceding when it was $19,468.77.

During the month of July, 1906, thirteen death losses, amounting to $12,750, were proved up in the regular way and filed in the Supreme office. No formal entry was made in the record of proceedings of the directors allowing the claims based on those proofs of loss. All of the proofs except three had the following indorsement thereon:

''Submitted to the Board of Directors of the Fraternal Home ............ 1906, and allowed in the sum of $.............., C. N. Sears, Supreme Sec.'' Those blanks were properly filled.

The evidence shows that it was not the custom to make the record of proceedings of the directors show such allowance of the death losses, but that such allowances were ordinarily shown by such indorsement of the secretary on the proofs. So far as the evidence shows, the death losses for July, 1906,

were more than double those of any previous month.

On July 31, 1906, the board of directors entered into a so-called contract of re-insurance with the Kansas City Life Insurance Company, an "old-line" company. By that agreement all the assets of the Fraternal Home were transferred to the other company, which agreed to pay all liabilities of the Fraternal Home, specifically naming the thirteen death losses above mentioned.: It also agreed on certain terms, not necessary to be here stated, to insure those members of the Fraternal Home who should, in the manner there provided for, agree to accept such insurance on those terms. No provision of any kind was made for those members of the Fraternal Home who should fail to so accept. Both Anderson and Clark testified, in effect, that they were alarmed at the death losses in July and considered the Fraternal Home as insolvent. Anderson testified as follows:

"Q. Now, how long were you consulting over this proposed transfer, Mr. Anderson, as president of the Fraternal Home? A. Well, sir, now, that is a question that is spread over most of the time of the Fraternal Home's life. We come very near merging with two or three or four or five or six other concerns, since we were in hard straits; we took over some little orders ourselves—merged with others—and we talked some with the Kansas City Life and some with other institutions, a year or two before we merged, and we were afraid we would get on the breakers, and some of the—not many—in fact, the only company was the Kansas City Life, that would take our old members that got too old to find insurance any other place, and those that were sick and in no condition to stand re-examination; there wouldn't nobody take them except the Kansas City Life, without re-examination.

"Q. You had had the matter up with the Kansas City Life for some time prior to the 31st day

of July, 1906? A. Oh, we talked to them about it quite a while before, as we had with others.''

Clark testified as follows:

''Q. How long had this question of the merger of this company with the Kansas City Life been contemplated or discussed before it was done? A. Oh, probably for a year, not with the Kansas City Life, in particular, but with other organizations.''

The evidence shows that no member of the Fraternal Home except such directors and Sears, their secretary, had any knowledge of the contemplated deal with the Kansas City Life Insurance Company until after it was closed. Lodge Number One, with two hundred and seventy-two beneficiary members, was located at Hamilton. All of the directors of the Supreme Lodge were residents of Hamilton and members of the local lodge at that place.

Immediately after July 31, 1906, all the assets of the Fraternal Home, including the office furniture, were turned over to the Kansas City Life, and no further business of any kind was done by said board of directors of the Fraternal Home except as hereafter stated. The assessments called by the board of directors in July and sent to the Fraternal Home by the subordinate lodges in August amounted to $6474.-70, which was by the directors turned over to the Kansas City Life Insurance Company under said agreement. After July 31, 1906, members of the Fraternal Home to the number of 3769 accepted the terms of the agreement made of that date and became policy holders in the Kansas City Life Insurance Company. The evidence does not show the respective amounts called for by their beneficiary certificates, nor does it show the ages of such persons or the comparative amounts of their monthly assessments.

On August 23, 24 and 25, 1906, a meeting of delegates from 134 subordinate lodges of the Frater-

nal Home was held at Hamilton, for the purpose of electing other supreme lodge officers in the place of those who had made the agreement with the Kansas City Life Insurance Company, and for the further purpose of fully arranging to carry on the business of the fraternity. The following supreme officers were elected: R. F. Whitman, president; E. E. McQuillen, vice-president; K. N. Dwight, secretary; and A. H. Brown, treasurer, and they were made supreme directors. On the day that meeting adjourned an injunction suit was begun in the circuit court in the names of the Fraternal Home and those who, on July 31, 1906, composed its supreme officers, against those above named persons who had been named to succeed them, and against other members of the order. The petition therein alleged the then existence of the Fraternal Home as a corporation, and that the other plaintiffs were its supreme officers and directors. It also alleged that the persons who had been named as supreme officers at the meeting in August above mentioned were attempting to usurp said offices and to interfere with the efforts of plaintiffs to regularly conduct the affairs of the Fraternal Home. An injunction was issued restraining any further efforts of the defendant therein to interfere with the efforts of the plaintiffs therein to regularly conduct such business.

On March 18, 1907, about fifty of those persons who held benefit certificates in the Fraternal Home filed a petition in a suit against the Fraternal Home, the Kansas City Life Insurance Company, said former directors of the Fraternal Home, and the State Superintendent of Insurance, asking for the appointment of a receiver for the Fraternal Home, and for a judgment against said former directors for the amount of property turned over by them to the Kansas City Life Insurance Company. On June 17, 1908, a demurrer to the petition was sustained, on the

grounds that the suit should have been brought by the Attorney-General or the prosecuting attorney at the relation of the persons desiring to prosecute such suit, under section 1407, Revised Statutes 1899. Another suit was thereupon begun in accordance with that section, in which the plaintiff Bowman was appointed receiver of the Fraternal Home, and on June 10, 1909, as such receiver he began this suit.

The petition is in three counts. The first seeks to recover $18.074.78, being the sum total of the cash and bills receivable turned over to the Kansas City Life Insurance Company, and also $300, the alleged value of the office furniture. The second count seeks to recover $6500, the alleged amount of the assessments collected in August, 1906, and turned over to the latter company. The third count sought to recover excessive salaries received by the directors of the Fraternal Home. This count is not in controversy here.

The answer admitted the making of the agreement with the Kansas City Life Insurance Company. It alleged that since January, 1906, the membership of the Fraternal Home and its cash assets had been declining and that it was insolvent; also alleged that said contract was made in good faith for the best interests of the members of the Fraternal Home. It alleged that plaintiffs had been guilty of laches. It admitted that the amount of cash and bills receivable mentioned in the first count of the petition had been delivered under that agreement to the Kansas City Life Insurance Company, also the office furniture of the value of about $100. It alleged that there were outstanding checks against the Fraternal Home amounting to $728.66 at the time of the transfer, and that those checks were paid by the Kansas City Life Insurance Company. That about four thousand members of the Fraternal Home signed and sent to the

latter company the acceptance slips which had been sent to all the members of the Fraternal Home, and that the Kansas City Life Insurance Company had issued a certificate of insurance to each of those who had so accepted. The answer contained the following allegation:

"That in death losses, claims, expenses and legitimate liabilities of the Fraternal Home, the said Kansas City Life Insurance Company has paid out and expended for said Home and for the benefit of its members, under said trust agreement, more than all the property, money and assets of any and all kinds received under said trust agreement was worth and amounted to, and for which defendants ask credit; that there are still unsettled and unadjusted claims of the Fraternal Home which are being pressed and threatened to be pressed in the courts against the Kansas City Life Insurance Company under and by virtue of said trust agreement, and but recently the said Kansas City Life Insurance Company has been sued in the circuit court of Jackson County, Missouri, for the death loss of one John W. Cox, on a policy issued by said Fraternal Home, and judgment has been rendred thereon against the said Kansas City Company for over $3000 and costs, which judgment said insurance company will be forced to pay and which was rendered and prosecuted under and by virtue of said trust agreement." The answer as to the second count of the petition contained among other things the following:

"Further answering the second count of said petition the defendants say that immediately after the execution of the trust agreement and re-insurance contract between the Fraternal Home and the Kansas City Life Insurance Company hereinbefore referred to in this answer, some 4000 members of the Fraternal Home ratified said contract and paid their dues, premiums and assessments to the Kansas City Life

Insurance Company, and these defendants had nothing to do with said money and received no money from the members of the Fraternal Home after July 31, 1906, nor at any other time, and any and all money received by the Kansas City Life Insurance Company, if any, from members of the Fraternal Home, in August, 1905, was paid out by it for the benefit of the Fraternal Home."

There is no reply in the record, but the case was tried on the theory that there was a general denial to the answer.

By stipulation the cause was tried before the Hon. B. J. Casteel as referee. The defendants offered in evidence the proofs of death in the thirteen claims which were specifically mentioned in the contract with the Kansas City Life Insurance Company. Those proofs were on the forms furnished by the Fraternal Home. Each of them consisted of the original beneficiary certificate, or a copy thereof, the affidavits of the beneficiaries, a friend, the attending physician, the undertaker, the president and secretary of the local lodge, showing the death and burial, relationship and other essential facts. To the introduction of those proofs the plaintiff objected as follows:

"The position of the plaintiff, in reference to the proofs of loss offered, is that the proofs themselves constitute no liability whatever of the Fraternal Home, or a claim against the Fraternal Home, and that it is not offered to show, in connection with the proofs of loss referred to, that the tribunal authorized to pass upon proofs of loss by the by-laws and constitution of the Fraternal Home, had ever passed upon or ratified the proofs of loss now offered, and that the sole power and authority to pass upon those proofs is provided in the by-laws, as the supreme board of directors of the Fraternal Home—these defendants—and inasmuch as it is not offered to follow up the proofs of loss themselves by the further proof that

they had been passed upon and allowed as claims, either before the 31st day of July, 1906, by the proper tribunal of the Fraternal Home, under its by-laws and constitution, plaintiff insists that said offer should be refused.''

The objection was overruled.

Defendants also offered in evidence proofs of death in the matter of the claim of Pearl Bookmiller under the certificate on the life of one Bookmiller. The proofs in that case are not set out in the abstract for the reason, as stated by counsel, that they could not be found. The plaintiff made the same objections thereto as were made to the other proofs of death, and made no other objections. The objections were overruled. The evidence showed that all those death claims were paid by the Kansas City Life Insurance Company. There was no evidence to sustain the claim that the Kansas City Life Insurance Company paid any outstanding checks of the Fraternal Home.

Defendants claimed credit for $2000 paid on the Cox claim. That claim had been put in judgment against the Kansas City Life and that judgment was affirmed by the Kansas City Court of Appeals, in 154 Mo. App. 464. We are referred to the report of that case for the facts. It is sufficient to say that the Court of Appeals held in effect that Cox had accepted the terms of the agreement with the Kansas City Life Insurance Company and was entitled to its benefits. Cox died in April, 1907.

The referee made his report in which he found that the Kansas City Life Insurance Company had received under the contract cash and bills receivable amounting to $18,074.78, the office furniture valued at $100, that it had paid the thirteen death claims specifically mentioned in the contract, amounting to $12,-750; that 3769 of the members of the Fraternal Home had signed the acceptance slips and sent them to the

Kansas City Life Insurance Company. That report contained the following:

"Fifth. That after said transfer, the death of Pearl Bookmiller, who held a certificate in the Fraternal Home and who had died prior to the transfer, was reported to the Kansas City Life Insurance Company, and said company settled that claim by paying $925; the death had never been reported to, nor the claim allowed by, the Fraternal Home."

Also the following:

"In my opinion the board of directors did allow the following claims, namely: J. M. Spradlin, $1000; Henry Walker, $900; George E. Marcum, $500; Annie W. Campbell, $500; Nathaniel J. Murphy, $1000; W. E. Bryan, $650; H. S. Hatterton, $400; Annie W. Stroup, $900; Lizzie Breshears, $900; Retta N. Sears, $1000; William F. Wren, $2000; John F. Varnell, $500; William J. Manes, $1000; making a total of $12,750, and authorized their payment by the Kansas City Life Insurance Company, and said payment was made by said life insurance company, and in view of all the facts, I recommend that the claim for those death losses be allowed, and that defendant be credited with that sum.

"Second. As to the credit asked for $728.66, claimed to be in outstanding checks against the Fraternal Home at the time of the transfer, the proof, in my opinion, is insufficient to allow that claim, and I recommend that it be not allowed.

"Third. The Bookmiller claim was not reported until after the transfer, although the death occurred prior thereto. It was not reported to nor allowed by the board of directors. The amount paid by the Kansas City Life Insurance Company, in compromise of said claim, was $925, which I do not think should be allowed and I so recommend.

"Fourth. The J. W. Cox claim of $2000, who died some eight months after the transfer, and who

had signed a certificate of acceptance of reinsurance in the Kansas City Life Insurance Company, and whose widow afterwards recovered judgment and received from the Kansas City Life Insurance Company $3040 (See Cox v. Kansas City Life Insurance Co., 154 Mo. App. 464), should not be allowed, and I so recommend.

"Fifth. As to the other claims asked credit for, I am of the opinion that none of them, under the proof, should be allowed, and I so recommend.

"So that, after deducting from the assets transferred ($18,074.78), the death claims allowed and mentioned in the agreement, amounting to $12,750, there would remain $5324.78, and interest thereon at six per cent per annum, from July 30, 1906, to December 31, 1911 (five years and five months), amounting to $1730.55, making, in the aggregate, principal and interest $7055.33, for which sum I recommend that judgment be allowed in favor of plaintiff and against the defendants on the first count in the petition.

"The amount claimed in the second count of the petition, for the August collections, shown to be $6474.60, under the findings of fact, with interest thereon at six per cent per annum from August 1, 1906, to December 31, 1911, amounting to $2070.54, making principal and interest $8540.98, for which sum I recommend that judgment be given for plaintiff and against the defendants.

"The testimony shows that there was an item of accrued and unpaid interest on notes transferred to the Kansas City Life Insurance Company amounting to $404.50, and office furniture and fixtures of the value of $100, but as plaintiff has not asked judgment for those sums, it will not be given."

Neither the referee in his report nor the court made any finding on the question as to whether the contract between the Fraternal Home and the Kansas City Life

Insurance Company was made in good faith on the part of the directors of the Fraternal Home.

Exceptions to that report were duly filed by both sides. Those exceptions were sufficient to raise all questions here discussed. The circuit court overruled all of the exceptions of the defendants, and, on plaintiff's exception, disallowed the credit for $12,750 paid by the Kansas City Life Insurance Company on the thirteen death claims specifically mentioned in the agreement.

The plaintiff was allowed to amend the first count of his petition so as to include the claim for $405.50, the amount of interest accrued on the real estate loans at the time they were transferred to the Kansas City Life Insurance Company.

The court on March 25, 1912, rendered judgment in favor of the plaintiff for the assets of the Fraternal Home delivered to the Kansas City Life Insurance Company, as follows:

On first count:

| | |
|---|---:|
| Real estate loans | $10,250.00 |
| Interest then accrued thereon | 405.50 |
| Cash | 7,824.78 |
| Value of furniture | 100.00 |
| | $18,580.28 |
| Interest on above items from Sept. 1, 1906, to date of judgment | 6,199.60 |
| | $24,779.88 |

On second count:

| | |
|---|---:|
| Assessments paid in August | $6,474.70 |
| Interest to date of judgment | 2,160.35 |
| | $8,635.05 |

I. Appellants say that it is a matter of gravest doubt whether the agreement of July 31, 1906, was *ultra vires* as to the Fraternal Home. They have not been bold enough to brief or argue that proposition. We shall proceed on the theory that such agreement was beyond the powers of the officers of that corporation, and was therefore null and void.

*Ultra Vires.*

II. They also contend that such agreement was made by the directors of the Fraternal Home in good faith, and that, for that reason those directors were not personally liable for the results of that agreement. The facts on the question of good faith are all against the appellants. On the day the agreement was made the membership was larger than on any previous date. The July cash receipts were the largest monthly receipts in the history of the fraternity. The assets were then larger than ever before except in the preceding April when they were only a trifle larger. The claim is made that the unprecedented death losses in July caused the making of the agreement. Both Anderson and Clark, the only surviving directors, testified that such a deal had been discussed for a year previously, hence the July deaths could not have given rise to that discussion. In all that time no one except the directors and their secretary had any intimation that such a move was contemplated, though two hundred and seventy-one members of the local lodge were right at hand and entitled to be consulted. Anderson, by that deal, became vice-president of the Kansas City Life Insurance Company at $2000 a year, and Sears became its assistant secretary. Tilley and Sanderson were dead at the time of the hearing, and we are admonished to say *"de mortuis nil nisi bonum."* On August 25th after the agreement in controversy they joined with Anderson and Clark in the injunction proceeding evidently in-

*Good Faith.*

tended to thwart any effort to keep the Fraternal Home on its feet. They then knew beyond question that Anderson and Sears had received their positions in the Kansas City Life Insurance Company by that deal; and we have the right to infer that they knew such fact at the date of the agreement. We are forced to the conclusion that there was no good faith in the transaction.

III. It is never *ultra vires* of a corporation to provide for the payment of its valid debts so far as its assets are available for that purpose. In Des-

Payment of Debts.

combes v. Wood, 91 Mo. 196, and in Hutchinson v. Green, 91 Mo. 367, it was held that an insolvent corporation may make an assignment for the purpose of paying its debts. It is not necessary here to decide that a fraternal-beneficial corporation can do so. We are proceeding on the theory that its directors cannot make an agreement such as the one here in controversy by which, in addition to paying its debts, its assets are applied to other purposes foreign to its charter. But we do hold that in so far as the agreement did ultimately result in the payment of the valid liabilities of the Fraternal Home, that result should not now be disturbed. So far as the Fraternal Home is concerned, its debts were paid, and paid out of the very assets which its receiver now seeks to recover relieved of those debts. It remains to determine what valid debts of the Fraternal Home were paid by the Kansas City Life Insurance Company.

The by-laws provided that proofs of death and of the claimant's rights should be made in the manner there called for, and also provided for an allowance of such claims by the board before the payment of them. We may concede without deciding that the making of proofs of death and of the claimant's right is necessary for a recovery on such a claim. But,

most assuredly, it is not necessary to such recovery that the board of directors should first allow the claim. That would be making them judge in their own cause. The books are too full of cases where recovery has been had in spite of the refusal of the directors to allow the claims, to make it necessary to cite authorities.

The necessary proofs were made in all the thirteen claims specifically mentioned in the contract. All but three of them were indorsed by the secretary as having been allowed by the board. The provision made in the contract for their payment was certainly a sufficient allowance by the directors. They were paid. That ought to be the end of the controversy as to those items.

The Bookmiller claim on which $925 was paid by the Kansas City Life Insurance Company is somewhat different. The death in that case occurred a few days prior to July 31st. The proofs were made after that date and presented, not to the Fraternal Home, but to the Kansas City Life Insurance Company. They could not be presented to the Fraternal Home for the reason that its offices were closed. Those proofs were put in evidence. The plaintiff made the objection thereto as set out in the statement. That objection did not go to the sufficiency of the proofs nor to their probative force as such proofs, but was confined to the proposition that the claim had not been allowed by the Fraternal Home, and that, in the absence of such allowance, such proofs constituted no liability of that fraternity. That objection was properly overruled. It results that the proofs as to that claim were in evidence without any valid objection being made thereto.

From the statement of appellants' counsel in their abstract it appears that since the hearing before the referee, those proofs have disappeared, and, for that reason, were not shown in the abstract. As the ob-

jection to those proofs was the same as in the other claims, we will presume that they were in essentials the same. Those proofs may be considered as offered for two different purposes:

1. Merely to prove that such proofs were made, in order to show compliance with the conditions of the contract of insurance.

2. To prove the existence of the facts therein stated, i. e., the death, etc.

There is no question but that for the first purpose they were competent and sufficient. For the second purpose they were incompetent as was held in Newmark v. Insurance Co., 30 Mo. 160, in Baile v. Ins. Co., 73 Mo. 371, and in Breckinridge v. Am. Cen. Ins. Co., 87 Mo. 62. In the first of those cases it was held that an instruction limiting the probative force of the proofs to the first purpose above mentioned was proper. In Garesche v. President of St. Vincent's College, 76 Mo. 332, and in Stanard Milling Co. v. Transit Co., 122 Mo. 258, it was held that where one party introduces evidence competent for one purpose only, if the other party desires its effect to be so limited he must ask an instruction for that purpose.

In the matter of the Bookmiller claim no valid objection was made to the proofs; neither the referee nor the court was asked in any way to limit the probative force of that evidence to the first mentioned purpose. The respondent raises the point here for the first time. He says that there is no evidence justifying the allowance of this claim in favor of the defendants. It was held in the following cases that where incompetent evidence is admitted without objection it must be given its probative force; Damon v. Carrol, 163 Mass. 404; Hubbard v. Allyn, 200 Mass. 166; Diaz v. United States, 223 U. S. 442, and the cases there cited. In the first two of those cases it was held that where evidence was competent for only

one purpose it should be considered for all purposes, in the absence of a request for an instruction to do otherwise.

Those proofs as to the Bookmiller item consisted of *ex parte* affidavits. They were incompetent, it is true, but they were such proofs as the directors were receiving as the basis of other such payments. They had probative force with the directors, and, in the absence of objection or distinction made as to the two purposes they were calculated to serve, the referee and the court had the right and it was their duty to consider them to the full extent of their probative force. Had the point been made at the hearing that those proofs were only competent for the first above named purpose, the defendants could doubtless have supplied the necessary evidence.

The point is made that the answer did not claim credit for the payment of this item. It did not specifically name it or any other such item, but stated that the Kansas City Life Insurance Company had paid out on the liabilities of the Fraternal Home more than the assets received by it. If plaintiff desired a more specific statement he should have made the necessary motion.

The defendants should be allowed credit for the amount of that claim. It is otherwise as to the payment made on the Cox claim. In that case the certificate-holder had notified the Kansas City Life Insurance Company of his acceptance of the terms of the agreement and had offered to comply therewith. That claim was adjudged to be valid, not against the Fraternal Home, but against the other company, which merely paid its own debt.

IV. Appellants say that 3769 members of the Fraternal Home "ratified the contract and accepted the provisions made for them, and thereby received

their full proportion of the assigned as- **Persistent and Seceding Members.** sets," and that the plaintiff cannot recover such proportion. In the first place no foundation is laid in the answer for the consideration of that subject. That answer does say in effect that 3769 members had accepted that contract, but it does not say that they received their proportion of the assets. It makes no claim for any deduction from their liabilities on account of the fact that those members had so accepted the provisions made for them. The answer does not allege the respective ages of such members, nor the amounts of their respective policies, nor the amounts of the monthly assessments paid by them. Their proportion, even if they were entitled to any, could not be determined in the absence of such showing. Moreover, the assets of such a fraternity belong to the organization composed of the persevering members. [Altmann v. Benz, 27 N. J. Eq. 331; Ahlendorf v. Barkous, 20 Ind. App. 657; McFadden v. Murphy, 149 Mass. 341; Polish Assn. v. Kubiak, 238 Pa. St. 464; Grand Court v. Hodel, 74 Wash. 314.] The only case cited by appellants to the contrary is Insurance Comr. v. Prov. Aid Society, 89 Me. 413. That case seems to be squarely in point and in favor of appellants. It has the misfortune of being unsupported by authority, and it does not cite any except the charter of the association and the statutes of that State. We decline to follow it.

The appellants seek to avoid the effects of the rule that the property belongs to the body composed of the persevering members by saying that the Fraternal Home did no business after July 31, 1906. Of course, if the fraternity, as such, became defunct on that day, all those who were members on that day would be entitled to their pro rata share of the assets. Appellants are in no position to claim that the Fraternal Home died on July 31, 1906. On August 25th following, they became co-

Bowman v. Anderson.

plaintiffs with it in a suit in which their petition alleged that it was still in existence. They obtained an injunction for the avowed purpose of protecting it in its orderly and usual business, though their evident purpose was to prevent any assistance being given until it should perish. We hold that it survived long enough to leave its assets as a heritage to the persevering members freed from any claim of those who had left it and gone into the Kansas City Life Insurance Company.

The judgment is reversed and the cause is remanded with directions to enter a judgment on the first count in which defendants shall be charged with the value of assets received by the Kansas City Life Insurance Company as follows:

| | |
|---|---|
| Real estate loans | $10,250.00 |
| Interest then accrued thereon | 404.50 |
| Cash | 7,824.78 |
| Furniture | 100.00 |
| | $18,579.28 |

and credited with the following:

| | |
|---|---|
| Amount of the thirteen claims specifically named in the agreement | $12,750.00 |
| Bookmiller claim | 925.00 |
| | $13,675.00 |
| Leaving a balance of | $4,904.28 |

On which balance interest shall be allowed plaintiff at six per cent from July 31, 1906, to the time at which the payment shall be entered.

On the second count, judgment shall be entered for $6474.60, the amount of the August collections, together with interest calculated as in the first count. *Williams, C.,* concurs.

PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court. All the judges concur, except *Revelle, J.,* not sitting.